UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT ABEYTA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DMCG, INC.,<br><br>　　　　　Defendant. | Case No. 22-cv-07089-SI<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE**<br><br>Re: Dkt. No. 13 |

On March 10, 2023, the Court held a hearing on defendant DMCG, Inc.'s motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(3), or in the alternative, to transfer venue under 28 U.S.C. § 1404(a). For the reasons set forth below, the Court DENIES DMCG's motion to dismiss for improper venue and alternative motion for discretionary transfer of venue.

**BACKGROUND**

On October 3, 2022, plaintiff Robert Abeyta, a resident of Oakland, filed this class action lawsuit against defendant DMCG in Alameda County Superior Court. DMCG removed the case to this Court on November 11, 2022. DMCG is a California corporation that operates as a bond agent "throughout the State" and has its headquarters in Riverside, California. Compl. ¶ 2. Abeyta claims that DMCG, doing business as "Bail Hotline Bail Bonds," did not provide him with written disclosures required under California consumer protection laws when he signed documents to obtain a loan for a non-refundable bail bond premium in order to bail a friend out of jail. Abeyta seeks to represent a class of "[a]ll people who cosigned a bail bond credit agreement from DMCG . . . which did not include the notice described in California Civil Code Section 1799.91[1] prior to signing, and

---

[1] "Under the notice provision [of § 1799.91], if a creditor obtains the signature of more than

who (1) owed, were asked to make, or made a payment on or after October 3, 2018, to DMCG . . . and (2) were not a spouse of the person who received release services under the arrangement at the time of cosigning." *Id.* ¶ 28.

In order to bail his friend out of jail, Abeyta signed three documents – a "Surety Bail Bond Agreement," a "Promissory Note," and a "Plain Talk Contract" – and he claims that those "credit agreements" were part of the same transaction and collectively created a contract. *Id.* ¶ 12. As part of these credit agreements, Abeyta co-signed a "consumer credit contract" financing a bail bond premium of $15,500. *Id.* ¶ 15. Abeyta paid a $4,500 "down payment" and one installment payment of $300. *Id.* ¶¶ 15, 21. Abeyta alleges that DMCG did not provide the written notice required under California Civil Code § 1799.91, and that "[i]nstead, Bail Hotline put Mr. Abeyta under the impression that his signature was merely needed to process his friend's release from jail, not that doing so would create an ongoing set of financial obligations and liabilities for him." *Id.* ¶ 16. Abetya claims he would not have agreed to co-sign or make any payments if DMCG had provided the notice required by Section § 1799.91. *Id.* ¶ 19. Abeyta also claims that DMCG attempted to collect on the remaining balance of the premium by calling him and mailing him letters despite California Civil Code § 1799.95 rendering these collection attempts unlawful.

---

one person on a consumer credit contract, and the signatories are not married, the creditor must provide the cosigner with a specified cosigner notice." *BBBB Bonding Corp. v. Caldwell*, 73 Cal. App. 5th 349, 361 (2021). Section 1799.91 requires the following notice:

NOTICE TO COSIGNER

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of your credit record.

This notice is not the contract that makes you liable for the debt.

Cal. Civ. Code § 1799.91.

2

The complaint asserts causes of action under California's Unfair Competition Law ("UCL") and the Rosenthal Fair Debt Collection Practices Act. Abeyta seeks monetary restitution, statutory damages, injunctive and declaratory relief, and all other appropriate relief from DMCG's unenforceable and unlawful credit bail agreements.

On December 23, 2022, DMCG filed a motion to dismiss under Rule 12(b)(3) and 28 U.S.C. § 1406(a) for improper venue, or in the alternative to transfer venue under 28 U.S.C. § 1404(a). DMCG invokes a venue selection clause contained in the Promissory Note signed by Abeyta, which provides that "Any litigation arising out of this bail bond(s) shall take place in Riverside, California." McGuire Decl., Ex. A (Dkt. No. 13-2).

**LEGAL STANDARD**

The general venue statute states that "[a] civil action may be brought in – (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

A defendant may move to dismiss a case for improper venue under Rule 12(b)(3) and 28 U.S.C. § 1406. If the initial venue is improper, the district court "shall dismiss, or if it be in the interest of justice, transfer the case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); *In re Hall, Bayoutree Assocs., Ltd.*, 929 F.2d 802, 804 (9th Cir. 1991). The interest of justice ordinarily requires transferring the case to the proper venue rather than dismissing the case. *Baeta v. Sonchik*, 273 F.3d 1261, 1264-65 (9th Cir. 2001).

If the Court finds that initial venue is proper, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a) seeks to "prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against

3

unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotations omitted).

## DISCUSSION

### I. Venue Selection Clause

DMCG moves to dismiss under Rule 12(b)(3) and 28 U.S.C. § 1406(a) on the ground that venue is improper in the Northern District of California because of the Promissory Note's clause designating Riverside, California as the venue for litigation.[2] However, "a forum-selection clause may be enforced by a motion to transfer under § 1404(a)," not "a motion to dismiss under [§ 1406(a)] or Rule 12(b)(3)." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. Of Tex.*, 571 U.S. 49, 52 (2013). In addition, dismissal under Section 1406(a) is not warranted as "venue is proper here because the case was filed in a state court within this district and then removed to federal court." *Stability Sols., LLC v. Medacta USA, Inc.*, No. 22-CV-07412-LB, 2023 WL 350546, at *3 (N.D. Cal. Jan. 20, 2023) (citing 28 U.S.C. § 1441(a) and *Skillnet Sols., Inc. v. Ent. Publ'n*, LLC, No. C 11-4865 PSG, 2012 WL 692412, at *4 (N.D. Cal. Mar. 2, 2012)).

DMCG moves in the alternative to enforce the Promissory Note's venue provision and transfer venue to the Central District of California. DMCG cites *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509 (9th Cir. 1988), for the proposition that "the federal rule announced in *The Bremen* controls enforcement of forum clauses in diversity cases" and under that rule, "[f]orum selection clauses are *prima facie* valid, and are enforceable absent a strong showing by the party opposing the clause 'that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching.'" *Id.* at 513, 514 (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

Abeyta argues that the venue clause is invalid because it is contrary to California law and public policy governing venue for specific types of consumer litigation as set forth in California

---

[2] The clause at issue is a venue selection clause rather than a forum selection clause. However, most of the case law addresses forum selection clauses, and thus this order uses both terms.

4

1   Code of Civil Procedure § 395(b)-(c). Section 395(b) provides "in an action arising from an offer
2   or provision of goods, services, loans or extensions of credit intended primarily for personal, family
3   or household use, . . . the superior court in the county where the buyer or lessee in fact signed the
4   contract, where the buyer or lessee resided at the time the contract was entered into, or where the
5   buyer or lessee resides at the commencement of the action is the proper court for the trial of that
6   action." Cal. Civ. Proc. Code § 395(b). Section 395(c) provides that "[a]ny provision of an
7   obligation described in subdivision (b) waiving that subdivision is void and unenforceable." *Id.*
8   § 395(c). Abeyta argues that under Section 395(b), Alameda County was the only permissible
9   venue because that is where he signed the Promissory Note, resided when he signed it, and resided
10  when filed the complaint, and that the venue clause providing for Riverside is void and
11  unenforceable under Section 395(c).

12  Abeyta argues that while federal law governs the enforcement of forum selection clauses in
13  diversity cases, state law determines the threshold question of whether the forum selection clause is
14  valid. Abeyta relies on *DePuy Synthes Sales, Inc. v. Howmedica Osteonics Corp.*, 28 F.4th 956 (9th
15  Cir. 2022), in which the Ninth Circuit affirmed a district court's denial of a motion to transfer venue
16  after finding a forum selection clause invalid under California Labor Code § 925. That statute
17  prohibits employers from requiring California employees to litigate disputes outside of California
18  and permits parties who were unrepresented by counsel when they signed agreements containing
19  forum selection clauses designating non-California forums to void such clauses. In *DePuy*, the
20  California plaintiff had exercised his right under section 925 to void a forum selection clause
21  specifying a New Jersey forum. The Ninth Circuit held that under those circumstances, while
22  federal law governed the enforcement of forum selection clauses, the validity of the forum selection
23  clause would be determined by state law. *Id.* at 963-64. The court expressly stated "[w]e need not
24  decide whether state law would govern the validity of a forum-selection clause that had not been
25  voided and is before the district court for consideration in the transfer analysis." *Id.* at 964 n.6.

26  Abeyta also argues that even if the validity of the venue clause was assessed under federal
27  law, the outcome is the same because under federal law, "a contractual forum selection clause is
28  'unenforceable if enforcement would contravene a strong public policy of the forum in which suit

is brought.'" *Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 914 (9th Cir. 2019) (quoting *The Bremen*, 407 U.S. at 15); *see also Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088-90 (9th Cir. 2018) (plaintiff has the burden to make a "strong showing" that a state statute or judicial decision "clearly states. . . a strong public policy."); *Rowen v. Soundview Commc'ns, Inc.*, No. 14-CV-05530-WHO, 2015 WL 899294, at *4 (N.D. Cal. Mar. 2, 2015) (collecting cases and concluding, "absent a total foreclosure of remedy in the transferee forum, courts tether their policy analysis to the forum selection clause itself, finding the forum selection clause unreasonable only when it contravenes a policy specifically related to venue."). Abeyta argues that Section 395(c) expresses a strong public policy of the State of California against coercing consumers to litigate consumer claims in inconvenient venues.

The Court agrees with Abeyta that the venue clause is unenforceable under federal law, and thus need not decide whether state law governs the validity of the venue selection clause. The venue clause "contravenes a policy specifically related to venue" as set forth in Section 395(b)-(c). Section 395(b) reflects the strong public policy of California "to permit venue in the county of the residence of the injured consumer-plaintiff," and Section 395(c) provides that venue provisions that violate section 395(b) are "void and unenforceable." *See Fontaine v. Sup. Ct.*, 175 Cal. App. 4th 830, 839 (2009) (issuing writ of mandate directing trial court to vacate transfer order that violated Section 395(b) and noting that "as intended by the Legislature, section 395, subdivision (b) provides a statutory exception to the general venue rule, by authorizing venue in the county where a consumer plaintiff resides at the commencement of his or her action arising from a consumer transaction as specified in the statute"). California courts have recognized that Section 395 "declare[s] the public policy of this state with respect to the proper court for an action," and have held that "agreements fixing venue in some location other than that allowed by statute are a violation of that policy." *Alexander v. Sup. Ct.*, 114 Cal. App. 4th 723, 731 (2003); *see also Jones*, 211 F.3d at 498 (holding forum selection clause was unenforceable based on California statute "voiding any clause in a franchise agreement limiting venue to a non-California forum" and expressing "a strong public policy of the State of California to protect California franchisees from the expense, inconvenience, and possibly prejudice of litigating in a non-California venue"). DMCG's reliance on *Fischer v.*

6

*Zespri Fresh Prod. N. Am. Inc.*, No. 1:07-cv-00610 LJO-NEW (WMW), 2007 WL 2385074, at *9-10 (E.D. Cal. Aug. 17, 2007), is unavailing because *Fischer* did not address the specific question presented here, namely whether a venue provision that contravenes the public policies set forth in Section 395(b)-(c) should be enforced.[3]

DMCG asserts that Section 395(b) does not apply to this case because that statute applies to loans "primarily for personal, family or household use," while the premium financing agreement Abeyta signed was to obtain a bail bond for his friend, not for use by Abeyta, his family, or his household. However, the California Court of Appeal recently held in *BBBB Bonding Corporation*, 73 Cal. App. 5th at 67-68, that a bail bond premium agreement is a "consumer credit contract" because it is an "extension of credit" "secured by other than real property, or unsecured, for use primarily for personal, family, or household purposes," under Cal. Civ. Code § 1799.90, thus triggering the disclosure requirements contained in Cal. Civ. Code § 1799.91. As in this case, the plaintiff in *BBBB* signed a premium agreement to bail out a friend. Although *BBBB*'s holding relates to Section 1799.91 and not Section 395(b), the same statutory language in both statutes should be given the same construction as applied to bail premium agreements. As such, the Court finds that a bail bond premium agreement is a "consumer credit contract . . . for use primarily for personal, family, or household purposes," under Section 395(b).

DMCG also contends that Section 395(b) does not apply because this a putative class action. DMCG has not cited any authority holding that Section 395(b) does not apply to putative class actions. The Court notes that the *BBBB* case is a statewide class action filed in Alameda County, the location where the named plaintiff co-signed the bail bond premium agreement. *See generally* Dkt. No. 22-2 at 13-16 (appellate brief filed by BBBB describing case).[4]

---

[3] In *Fischer*, the plaintiffs were kiwifruit growers who sued a kiwifruit distributor, and the distributor moved to enforce a contractual venue provision specifying Los Angeles courts for any litigation. The plaintiffs opposed transfer on the ground that the venue provision was void for failing to comply with the general venue statute, Section 395. It is not apparent from the *Fischer* decision whether the plaintiffs specifically argued that the venue provision was unenforceable under federal law because it was contrary to California public policy, and in any event, the contract at issue in *Fischer* would not appear to be a "consumer credit contract" falling under Section 395(b).

[4] The Court GRANTS Abeyta's request for judicial notice of the pleadings and trial court order in *BBBB*.

1      Accordingly, the Court concludes that the Promissory Note's venue selection clause is void
2 and unenforceable.

## II.     Discretionary Transfer of Venue

The Court now considers DMCG's motion to transfer venue to the Central District of California under 28 U.S.C. § 1404(a). To support a motion to transfer, DMCG must establish: (1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses, and will promote the interests of justice. *See Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F.Supp. 503, 506 (C.D. Cal. 1992). The parties do not dispute the first and second prongs,[5] and dispute whether transfer will be convenient and promote the interests of justice.

In the Ninth Circuit, district courts have "discretion to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). In making the determination, a court may consider: (1) where the relevant agreements were negotiated and executed; (2) the state most familiar with the governing law; (3) plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) contacts relating to plaintiff's cause of action in the chosen forum; (6) differences in litigation costs in the two forums; (7) ability to compel attendance of unwilling non-party witnesses; (8) ease of access to sources of proof; (9) presence of a forum selection clause; and (10) relevant public policy of the forum state, if any. *Id.* at 498-99. The moving party bears the burden of showing a transfer is "more" appropriate. *Id.*

The parties agree that the second and seventh factors are neutral. As discussed above, the Court has found that the venue clause is unenforceable due to California public policy, and thus the ninth and tenth factors do not weigh in favor of transfer. The remaining factors, discussed below, are either neutral or do not support transfer.

---

[5] Abetya states that if this case had originally been filed in federal court, it could have been filed in the Central District because DMCG is headquartered there. *See* 28 28 U.S.C. § 1391(b)(1).

8

The first factor supports venue in this District because Abeyta executed the agreements in Alameda County, within the Northern District.

On the third factor, while a plaintiff's choice of forum generally receives deference in a motion to transfer venue, in the class action context a plaintiff's choice is given less weight. *Lou v. Belzberg,* 834 F.2d 730, 739 (9th Cir. 1987) ("[W]hen an individual . . . represents a class, the named plaintiff's choice of forum is given less weight."). Nonetheless, even in a class action, a plaintiff may still be entitled to some deference. *See Shultz v. Hyatt Vacation Mktg. Corp.*, No. 10-CV-04568-LHK, 2011 WL 768735, at *3 (N.D. Cal. Feb. 28, 2011). Specifically, courts must consider "the extent of both [plaintiff's] and the [defendant's] contacts with the forum, including those relating to [plaintiff's] cause of action." *Lou*, 834 F.2d at 739 (citations omitted). Thus, in a proposed class action, the analysis under the third factor incorporates the fourth and fifth factors.

Here, Abeyta is a resident of Oakland. Abeyta's causes of action arise out of his execution of the credit agreements in this district and DMCG's collection attempts here in this district. DMCG maintains several bail bond offices within this District and its headquarters are in Riverside. Abeyta has no contacts with the Central District, but members of the proposed class may be residents of that district or have significant contacts. The third through fifth factors somewhat weigh against transfer.

On the sixth factor – differences in litigation costs between the two venues – because the claims arise out of DMCG's business practices, many of the witnesses will be DMCG's employees, and this this factor would weigh in favor of transfer. However, Abeyta argues that many of the employees he interacted with when signing the credit agreements are located here in this district. Abeyta also states that he is willing to depose DMCG's Southern California witnesses in a reasonable location convenient to them, such as Riverside, or remotely. Opp'n at 11. In addition, transfer is not appropriate if it simply shifts the inconvenience from one party to another. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). As such, this factor is neutral.

Finally, as to ease of access to sources of proof, DMCG argues that the relevant documents are likely to be located in Riverside. However, Abeyta asserts that DMCG will also have to produce

the documents from the bail bond office located within this district, and Abeyta contends that most documents produced during discovery will be delivered electronically as the events giving rise to the litigation only occurred in the past two years. The Court finds that this factor is largely n neutral given that documents are likely to be located in both districts and the fact that much document production is electronic.

Having weighed the *Jones* factors and finding most of them neutral, and keeping in mind the broad discretion granted to district courts when deciding a motion to transfer venue, the Court concludes that transfer to the Central District will not further the convenience of the parties or the interests of justice under §1404(a).

**CONCLUSION**

For the foregoing reasons, the Court DENIES DMCG's motion to dismiss and alternative motion for transfer of venue.

**IT IS SO ORDERED**.

Dated: April 12, 2023

SUSAN ILLSTON
United States District Judge