United States District Court
Northern District of California

'

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT ABEYTA,<br><br>    Plaintiff,<br><br>  v.<br><br>DMCG, INC.,<br><br>    Defendant. | Case No. 22-cv-07089-SI<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND DENYING ADMINISTRATIVE MOTION**<br><br>Re: Dkt. Nos. 14, 33 |

On March 10, 2023, the Court held a hearing on defendant DMCG's motion to dismiss for failure to state a claim. For the reasons articulated by Abeyta in his papers and at the hearing, the Court finds that Abeyta has stated claims under the UCL and the Rosenthal Act and DENIES DMCG's motion to dismiss. The Court DENIES Abeyta's administrative motion to submit supplemental briefing.

**DISCUSSION**

The factual background of this case is set forth in the Court's April 12 order denying DMCG's motion to dismiss for improper venue.

DMCG moves to dismiss Abeyta's claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788 *et seq.*, for failure to state a claim. DMCG also argues that Abeyta lacks standing under the UCL, that the UCL claims are precluded by safe harbors, and that Abeyta cannot seek restitution or injunctive relief under the UCL. Finally, DMCG asserts that the claims for declaratory relief fail because there are no underlying violations.

To have standing to sue under the UCL, a plaintiff must allege that they have "suffered injury

in fact" and have "lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code §§ 17203-04. Abeyta has standing because he alleges that he paid $4,800 to bail his friend out of jail and that he would not have paid that money or signed any documents if he had been provided the consumer disclosures required by California Civil Code Sections 1799.90-91. Compl. ¶¶ 15, 19-20. In addition, DMCG's challenge to Abeyta's standing raises factual questions about causation and what constitutes the "contract" and the "transaction" that are not appropriate for resolution at this stage of the litigation.

Abeyta has stated a claim under the unlawful prong of the UCL by alleging violations of California Civil Code Sections 1799.91 and 1799.95. In *BBBB Bonding Corp. v. Caldwell*, 73 Cal. App. 5th 349 (2021), the plaintiff claimed – as Abeyta does here – that a bail bonding company violated the UCL by failing to provide consumer disclosures required under Section 1799.91 when the plaintiff co-signed a premium agreement to bail out a friend. The California Court of Appeal held that the Section 1799.91 consumer disclosure requirements applied to bail bond premium financing agreements and thus that bail bond company was "prohibited under section 1799.95 from filing actions or attempting to collect on these contracts with the cosigners." *Id.* at 358, 360. The court affirmed the trial court's preliminary injunction enjoining the bail bonding company from enforcing bail bond premium agreements against the plaintiff and class members who had cosigned such agreements without first being provided the statutory notice. *BBBB* is directly on point, and DMCG has not cited any countervailing authority.

Abeyta has also stated a claim under the unfair prong of the UCL. The "unfair" prong of the UCL "offers an independent basis for relief" that "is intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud." *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886 (1999) (cleaned up). "The term 'unfair' as it is used in the UCL context has been defined in numerous ways, none of which has yet been adopted as controlling by the California Supreme Court or the Ninth Circuit in the context of consumer fraud." *Pirozzi v. Apple Inc.*, 966 F.Supp.2d 909, 921 (N.D. Cal. 2013) (discussing different tests that courts have used to determine whether a business practice is unfair). The Court finds that regardless of which test applies, Abeyta has sufficiently alleged that DMCG engaged in an unfair business

2

1    practice that caused him harm, and that whether the challenged practices are actually unfair is "a
2    question to be resolved at a later stage in this litigation." *In re Anthem, Inc. Data Breach Litig.*, 162
3    F. Supp. 3d 953, 990 (N.D. Cal. 2016).

4        DMCG's safe harbor arguments are unpersuasive for the reasons stated in *BBBB*.  In that
5    case, the California Court of Appeal rejected the bail bonding company's argument that it did not
6    violate the UCL because its conduct was protected by various regulatory safe harbors.  *See BBBB*,
7    73 Cal. App. 5th at 377 (holding no safe harbor existed because "BBBB does not cite any
8    Department regulation that 'expressly' or 'explicitly' bars the relief sought by Caldwell under the
9    consumer credit protection statutes or 'clearly permits' BBBB's conduct here.  Instead, BBBB
10   repeats its general point that the Department has adopted regulations governing all aspects of bail
11   transactions, and reiterates its view that it is in compliance with its obligations under the Insurance
12   Code.").  The Court agrees with the analysis in *BBBB* and for the same reasons finds that DMCG
13   has not shown that any safe harbor applies here.  Further, the cases that DMCG does rely on, such
14   as *Indiana Lumbersmen Mutual Insurance. Company v. Alexander*, 167 Cal. App. 4th 1544 (2008),
15   are inapposite.  *See id*. at 1548 (interpreting and applying Cal. Pen. Code § 1300(b), which provides
16   that if a bail bond company surrenders a defendant to custody without good cause, the court "may,
17   in its discretion, order the bail or depositor to return to the defendant or other person who has paid
18   the premium or any part of it, all of the money so paid or any part of it.").

19       The Court is unpersuaded by DMCG's arguments about Abeyta's requests for restitution
20   and injunctive relief.  Abeyta alleges that he is still liable under the premium agreement and that
21   DMCG has attempted to collect, thus stating a basis for injunctive relief.  DMCG's arguments about
22   restitution raise factual questions that cannot be resolved at this stage of the litigation, as the cases
23   upon which DMCG relies demonstrate.  *See, e.g.*, *In re Tobacco Cases II*, 240 Cal. App. 4th 779,
24   791-801 (2015) (affirming trial court's denial of restitution after a bench trial where, *inter alia*,
25   "Plaintiffs do not challenge the sufficiency of the evidence to support the court's findings that they
26   received value from Marlboro Lights apart from the deceptive advertising, and they did not submit
27   competent evidence to establish the difference between the price they paid for Marlboro Lights and
28   the actual value they received").

3

Abeyta has also stated a claim under the Rosenthal Act. Abeyta alleges that DMCG represented that the debt was valid and enforceable despite its failure to provide the written notice required under Section 1799.91, Compl. ¶¶ 15, 16, 20-25, and that DMCG threatened him with various actions despite the invalidity of the debt and unenforceability of the premium agreement. *Id.* ¶¶ 22, 24, 25 (describing specific threats and actions).[1]

Finally, because Abeyta has stated claims under the UCL and the Rosenthal Act, his claims for declaratory relief may proceed.

## CONCLUSION

For the foregoing reasons, the Court DENIES DMCG's motion to dismiss the complaint. The Court DENIES Abeyta's administrative motion for supplemental briefing.

**IT IS SO ORDERED**.

Dated: April 20, 2023

_____
SUSAN ILLSTON
United States District Judge

---

[1] Abeyta's allegations are more specific than the complaint in *Medina v. Two Jinn*, where Medina alleged that "[a]fter [she] signed the Credit Agreements, Aladdin representatives frequently and repeatedly called her demanding that she make additional payments, without advising her that the Credit Agreements were in fact unenforceable." Compl. at ¶ 20, *Medina v. Two Jinn, Inc.*, No. 3:22-cv-02540-TLT (N.D. Cal. Apr. 26, 2022). Judge Thompson granted Two Jinn's 12(b)(6) motion to dismiss in part on the Rosenthal claim because "[n]o facts are alleged–such as the who, when, where, and how–are alleged about defendant's purported false representations, threats to take action, and collection efforts." *Medina v. Two Jinn, Inc.*, No. 3:22-cv-02540-TLT, slip op. at 11 (N.D. Cal. Feb. 22, 2023).