Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Yaman Salahi (SBN 288752)
ysalahi@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Natasha J. Fernández-Silber (*pro hac vice*)*
nfernandezsilber@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60653
Tel: 312.589.6370
Fax: 312.589.6378
* Admitted in Michigan and New York only

*Attorneys for Plaintiff and the proposed Settlement Classes*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBERT ABEYTA, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>   v.<br><br>DMCG, INC., a California corporation,<br><br>    Defendant. | CASE NO.: 3:22-cv-07089-SI<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT**<br><br>Date: January 10, 2025<br>Time: 10:00am<br>Judge: Honorable Susan Illston<br>Courtroom: 1, 17th Floor |

## <u>TABLE OF CONTENTS</u>

I.      **INTRODUCTION** ..............................................................................................1

II.     **BACKGROUND** ...............................................................................................2

     A.    Mr. Abeyta's Experience ...............................................................2

     B.    Defendant's Motion to Transfer Venue and Motion to Dismiss ...........................4

     C.    Discovery.....................................................................................4

     D.    Settlement Negotiations ...............................................................4

III.    **SUMMARY OF SETTLEMENT TERMS** ........................................................5

     A.    Settlement Classes........................................................................5

     B.    Settlement Fund............................................................................6

     C.    Allocation ....................................................................................6

     D.    Prospective Relief.........................................................................7

     E.    Payment of Settlement Notice and Administrative Costs ..................................7

     F.    Payment of Attorney's Fees, Costs, and Service Award.......................................8

     G.    Release of Liability ......................................................................8

III.   **THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASSES** ................................................................................................................9

     A.    The Proposed Settlement Class Is Sufficiently Numerous....................................9

     B.    Common Questions Predominate Over Individual Issues.....................................9

     C.    Mr. Abeyta Is Typical of the Proposed Settlement Classes ................................11

     D.    Mr. Abeyta and His Attorneys Are Adequate Representatives of the Proposed Settlement Classes ......................................................12

     E.    Class Treatment Is Superior to the Alternatives....................................13

IV.   **THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL** .........14

     A.    Mr. Abeyta and Proposed Class Counsel Adequately Represented the Classes ........................................................................................15

     B.    The Settlement Was Negotiated at Arm's Length and There Are No Indicia of Collusion ..............................................................16

     C.    The Relief Obtained Is Meaningful and Significant Compared to Similar Settlements ...................................................................18

     D.    The Settlement Treats Class Members Equitably .................................23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**V.     THE PROPOSED NOTICE COMPLIES WITH DUE PROCESS AND RULE 23**........................................................................................................**23**

**VI.    CONCLUSION**.............................................................................................................**25**

# **TABLE OF AUTHORITIES**

## **CASES**

*Abeyta v. DMCG, Inc.*,
  No. 22-cv-07089-SI, 2023 WL 3047054 (N.D. Cal. Apr. 20, 2023) ................................ 21

*Akaosugi v. Benihana Nat. Corp.*,
  282 F.R.D. 241 (N.D. Cal. 2012) ................................................................................... 9

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ...................................................................................................... 13

*Arris Cable Modem Consumer Litig.*,
  327 F.R.D. 334 (N.D. Cal. 2018) ................................................................................... 10

*BBBB Bonding Corp. v. Caldwell*,
  73 Cal.App.5th 349 (2021) ............................................................................................ 10

*Cavazos v. Salas Concrete, Inc.*,
  2022 WL 2918361 (E.D. Cal. July 25, 2022) ................................................................ 19

*Clancy v. The Salvation Army*,
  No. 1:22-cv-01250 (N.D. Ill. May 11, 2023) ................................................................ 24

*Cmty. Res. for Indep. Living v. Mobility Works of Cal., LLC*,
  533 F.Supp.3d 881 (N.D. Cal. 2020) ............................................................................ 16

*Cottle v. Plaid Inc.*,
  340 F.R.D. 356 (N.D. Cal. 2021) ........................................................................ 12, 14, 16

*Daniel v. Ford Motor Co.*,
  806 F.3d 1217 (9th Cir. 2015) ....................................................................................... 10

*Dominguez v. All-Pro Bail Bonds, Inc., et al.*,
  No. 21CV381890 (Cal. Super. Ct. Santa Clara October 18, 2023) ................................. 2

*Donahue v. Quick Collect, Inc.*,
  592 F.3d 1027 (9th Cir. 2010) ....................................................................................... 11

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011) ...................................................................................................... 9

*Etter v. Thetford Corp.*, No. SACV 13-00081-JLS (RNB),
  2016 WL 11745096 (C.D. Cal. Oct. 24, 2016) .............................................................. 20

*Ferrell v. Buckingham Prop. Mgmt.*,
  2020 WL 4364647 (E.D. Cal. July 30, 2020) ................................................................ 18

*Gonzales v. Arrow Fin. Servs., LLC*,
  660 F.3d 1055 (9th Cir. 2011) ....................................................................................... 11

*Gumm v. Ford*, No. 5:15-CV-41-MTT,
  2019 WL 479506 (M.D. Ga. Jan. 17, 2019) .................................................................. 15

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ................................................................................ 11

*Hansen v. Newegg.com Ams., Inc.*,
25 Cal.App.5th 714 (2018) ................................................................................... 10

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir. 2013) .............................................................................. 10

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ................................................................................ 14

*In re Facebook Biometric Info. Privacy Litig.*,
No. 21-15553, 2022 WL 822923 (9th Cir. Mar. 17, 2022) .................................. 23

*In re Humphrey*,
11 Cal.5th 135 (2021) ........................................................................................... 19

*In re JUUL Labs, Inc. Mktg. Sales Prac., & Prods. Liab. Litig.*,
No. 19-md-02913 (N.D. Cal. Jan. 30, 2023) ....................................................... 24

*In re LinkedIn User Privacy Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) ......................................................................... 16

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 954 (9th Cir. 2000) ................................................................................ 18

*In re Omnivision Techs., Inc.*,
559 F.Supp.2d 1036 (N.D. Cal. 2008) ............................................................ 17, 22

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ................................................................................ 24

*In re Snap Inc. Sec. Litig.*,
No. 2:17-cv-0367-SVW, 2021 WL 667590 (C.D. Cal. Feb. 18, 2021) ............... 15

*Juarez v. Social Finance, Inc.*,
No. 20-cv-03386-HSG, 2022 WL 17722382 (N.D. Cal. Dec. 15, 2022)............. 12

*Kissel v. Code 42 Software, Inc.*,
No. SACV 15-1936-JLS (KES), 2017 WL 10560526 (C.D. Cal. Oct. 4.
2017).................................................................................................................. 18

*Koller v. W. Bay Acquisitions, LLC*,
No. C 12-00117 CRB, 2012 WL 1189481 (N.D. Cal. Apr. 9, 2012)................... 11

*Kwikset Corp. v. Super. Ct.*,
51 Cal.4th 310 (2011) ........................................................................................... 10

*Leyva v. Medline Indus. Inc.*,
716 F.3d 510 (9th Cir. 2013) ................................................................................ 14

*Luz Bautista-Perez v. Juul Labs, Inc.*,
No. 20-cv-01613-HSG, 2022 WL 307942 (N.D. Cal. Feb. 2, 2022) ................... 16

*McAdams v. Monier, Inc.*,
182 Cal.App.4th 174 (2010) ................................................................................. 10

*Medina v. Two Jinn, Inc.*, No. 22-cv-02540-RFL,
    2024 WL 4485592 (N.D. Cal. Mar. 28, 2024) ................................................................. 20

*Newton v. Am. Debt. Servs., Inc.*,
    No. C-11-3228-EMC, 2015 WL 3614197 (N.D. Cal. June 9, 2015) ............................... 10

*North v. Superior Hauling & Fast Transit, Inc.*,
    No. EDCV 18-2564 JGB (KKx), 2020 WL 12967999 (C.D. Cal. Dec. 7,
    2020) ............................................................................................................................ 20

*O'Connor v. Uber Techs., Inc.*,
    No. 13-cv-03826-EMC, 2019 WL 1437101 (N.D. Cal. Mar. 29, 2019) .......................... 15

*Rodriguez v. M.J. Bros, Inc.*,
    No. 1:18-cv-00252-LJO-SAB, 2019 WL 3943856 (E.D. Cal. Aug. 21,
    2019) ............................................................................................................................ 20

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................................................ 15

*Roes, 1-2 v. SFBC Mgmt., LLC*,
    944 F.3d 1035 (9th Cir. 2019) ...................................................................................... 16

*Schneider v. Chipotle Mexican Grill*,
    336 F.R.D. 588 (N.D. Cal. 2020) ................................................................................. 23

*Silber v. Mabon*,
    18 F.3d 1449 (9th Cir. 1994) ........................................................................................ 23

*Smith v. Keurig Green Mountain, Inc.*,
    No. 18-cv-06690-HSG, 2020 WL 5630051 (N.D. Cal. Sept. 21, 2020) ......................... 10

*Taafua v. Quantum Glob. Techs., LLC*,
    No. 18-cv-06602-VKD, 2020 WL 4732342 (N.D. Cal. Aug. 14, 2020) .......................... 22

*Vianu v. AT&T Mobility LLC*,
    No. 19-cv-03602-LB, 2022 WL 16823044 (N.D. Cal. Nov. 8, 2022) ............................. 16

*Vizcaino v. Microsoft Corp.*,
    97 F.3d 1187 (9th Cir. 1996) ........................................................................................ 16

*Vu v. I Care Credit, LLC*,
    No. CV 17-04609 RAO, 2022 WL 22871480 (C.D. Cal. Nov. 4, 2022) ........................ 19

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...................................................................................................... 9

*Wright v. Linkus Enters., Inc.*,
    259 F.R.D. 468 (E.D. Cal. 2009) ................................................................................. 19

**STATUTES**

15 U.S.C. § 1692k(a)(2)(B) ............................................................................................... 21

15 U.S.C. § 1692k(b)(2) .................................................................................................... 11

15 U.S.C. §§ 1692e(2), (5) ............................................................................................... 11

Cal. Bus. & Prof. Code §§ 17200 .......................................................................... 1, 10

Cal. Civ. Code § 1788.17 ...................................................................................... 3, 11

Cal. Civ. Code § 1799.90(a) ..................................................................................... 10

Cal. Civ. Code § 1799.91 ........................................................................................... 2

Cal. Civ. Code § 1799.91(a) ....................................................................................... 1

Cal. Civ. Code § 1799.92 ........................................................................................... 7

Cal. Civ. Code § 1799.95 ......................................................................................... 20

Cal. Civ. Code §§ 1788 .............................................................................................. 1

## RULES

Fed. R. Civ. P. 23(b)(3) ......................................................................................... 9, 14

Fed. R. Civ. P. 23(c)(2) ............................................................................................ 23

Fed. R. Civ. P. 23(e) ............................................................................................... vii

Fed. R. Civ. P. 23(e) Advisory Committee's Note to 2018 Amendment ............... 14, 15

Fed. R. Civ. P. 23(e)(1) ............................................................................................ 23

Fed. R. Civ. P. 23(e)(1)(B) ......................................................................................... 9

Fed. R. Civ. P. 23(e)(1)(B)(i) ................................................................................... 14

Fed. R. Civ. P. 23(e)(2) ........................................................................................... 14

Fed. R. Civ. P. 23(e)(3) ........................................................................................... 22

## OTHER AUTHORITIES

N.D. Cal. Procedural Guidance for Class Action Settlements, Preliminary Approval
    § 1 ....................................................................................................................... 6

N.D. Cal. Procedural Guidance for Class Action Settlements, Preliminary Approval
    § 1(b) ................................................................................................................... 8

N.D. Cal. Procedural Guidance for Class Action Settlements, Preliminary Approval
    § 1(c) ................................................................................................................. 18

N.D. Cal. Procedural Guidance for Class Action Settlements, Preliminary Approval
    § 1(g) ................................................................................................................... 6

N.D. Cal. Procedural Guidance for Class Action Settlements, Preliminary Approval
    § 2(a), (b) .......................................................................................................... 25

N.D. Cal. Procedural Guidance for Class Action Settlements, Preliminary Approval
    § 6 ..................................................................................................................... 17

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on January 10, 2025, at 10:00 a.m., or at such other time as may be set by the Court, Plaintiff Robert Abeyta will appear, through counsel, before the Honorable Susan Illston or any Judge sitting in her stead, in Courtroom 1, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, and then and there, respectfully move the Court, pursuant to Federal Rule of Civil Procedure 23(e), to grant preliminary approval of a proposed class action settlement reached between Plaintiff and Defendant DMCG, Inc. on Behalf of two Settlement Classes.

Plaintiff's motion is based upon this Notice, his Memorandum of Points and Authorities, the attached exhibits, including the Parties' proposed class action settlement agreement, the Declaration of Yaman Salahi, and the record in this matter, along with any oral argument that may be presented to the Court and evidence submitted in connection therewith.

Respectfully Submitted,

ROBERT ABEYTA, individually and on behalf of all other similarly situated,

Dated: December 6, 2024

By: /s/ Yaman Salahi

Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Yaman Salahi (SBN 288752)
ysalahi@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Natasha J. Fernández-Silber (*pro hac vice*)*
nfernandezsilber@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60653
Tel: 312.589.6370
Fax: 312.589.6378
* Admitted in Michigan and New York only

*Attorneys for Plaintiff Robert Abeyta
and the proposed Settlement Classes*

## I.    INTRODUCTION

Plaintiff Robert Abeyta seeks approval of his class action settlement agreement with Defendant DMCG, Inc. ("Bail Hotline").  This case is about people who cosigned payment plans for the premium on bail bonds sold by Bail Hotline.  California law requires that such cosigners be provided with a "Notice to Cosigner" before they become "obligated" on the debt agreements.  *See* Cal. Civ. Code § 1799.91(a).  The Notice plainly explains what it means to cosign, including that wages can be garnished, credit can be harmed, and collections may occur regardless of whether the primary debtor has been asked to pay first.  Mr. Abeyta claims that, prior to April 2021, Bail Hotline failed to provide the notice to cosigners in any transactions, and then for some time did not do so for non-electronic agreements.  Nevertheless, Bail Hotline allegedly collected money from those cosigners, and sent them misleading collection letters.  Plaintiff alleges that Defendant's conduct violated the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and seeks restitution of all sums paid by cosigners.  Plaintiff also alleges that Defendant's "Settlement Offer Letters"—which stated that the recipient cosigners owed a debt and implied that they could be sued if they failed to make payments—violated California's Rosenthal Act, Cal. Civ. Code §§ 1788, *et seq.*, and seeks statutory penalties.

After defeating Bail Hotline's motions to transfer venue and to dismiss, obtaining extensive discovery, and briefing class certification and a motion to strike certain materials filed by Bail Hotline, Mr. Abeyta and Bail Hotline agreed to settle this case.  This followed months of contentious negotiations and a full-day mediation handled by the Hon. Carl J. West (retired) of JAMS.  The Parties did not reach a tentative settlement until October 3, 2024, the night before the hearing on class certification.  Salahi Decl. ¶ 6.  They spent the next several weeks putting together the full settlement and class notices, which was executed on December 6, 2024.  Salahi Decl. ¶ 2; *see also* Salahi Decl., Ex. A ("Settlement").

The Settlement is an excellent result for class members under the circumstances: Bail Hotline will create a non-reversionary cash fund of $4.5 million, representing nearly 10% of all bail bond premiums paid by cosigners and not previously refunded as of the time of settlement.  This is a 66% higher rate of recovery than the only similar settlement involving a bail bond

company, All-Pro Bail Bonds. *See Dominguez v. All-Pro Bail Bonds, Inc., et al.*, No. 21CV381890 (Cal. Super. Ct. Santa Clara October 18, 2023) (Ex. B). Moreover, the Settlement accounts for the very real risk that Defendant could not satisfy a judgment given its precarious financial situation. Given Bail Hotline's financial condition, the settlement will be funded in five installments over four years, secured by a lien on Bail Hotline's commercial property.

Under the Settlement, Class Members' average net individual recovery is estimated to be about $109.57 and $25.29 for members of the UCL and Rosenthal Classes, respectively. Checks will automatically be mailed to every Class Member without any requirement to submit a claim, but Class Members can choose to receive payment electronically. In addition to monetary relief, Bail Hotline has agreed to revise its transaction forms to ensure compliance with Section 1799.91 and to stop attempting to collect the outstanding balance of the disputed bail bond transactions from class members (over $52 million).

The settlement guarantees that class members will receive money, and cuts short any risks and delay associated with ongoing litigation. Plaintiff respectfully moves this Court for an order certifying the proposed Settlement Classes for settlement purposes, appointing Mr. Abeyta to represent the Settlement Classes, appointing Rafey S. Balabanian, Yaman Salahi, and Natasha Fernández-Silber of Edelson PC as Class Counsel, preliminarily approving the Settlement, and ordering that notice be disseminated to class members.

## II.    BACKGROUND

### A.    Mr. Abeyta's Experience

In August 2021, Bail Hotline asked Mr. Abeyta to co-sign a bail bond premium payment plan to enable his friend to be released from jail pending trial. Compl. ¶ 15 (ECF No. 1). Mr. Abeyta made a "down payment" of $4,500. *Id.* However, he was never provided with the Section 1799.91 Notice. *Id.* ¶ 16. Nevertheless, Bail Hotline aggressively tried to collect more money from Mr. Abeyta, including by sending him a letter titled "SETTLEMENT OFFER NOTICE" which stated that his account was "seriously delinquent and past due," and that, as a cosigner, he was "equally liable for any past due balance of the [d]efendant." *Id.* ¶ 20-25.

1    Discovery has confirmed that Mr. Abeyta's experience with Bail Hotline was not unique.

2    As described in Mr. Abeyta's motion for class certification, *see* ECF No. 60, prior to April 16,

3    2021, Bail Hotline allegedly never provided the Section 1799.91 Notice to anyone.  *See* ECF No.

4    61-2 at 19:10-16, 45:21-24; ECF No. 61-3 at 75:22-24.  After April 2021, Bail Hotline provided

5    the notice to customers who signed the documents electronically, but not on paper.  ECF No. 61-2

6    at 19:10-16; ECF No. 61-3 at 115:15-117:17.

7    Although Bail Hotline knew it had failed to provide the requisite notice to thousands of

8    cosigners, Bail Hotline continued attempting to collect their money, even though they were

9    allegedly not obligated under the contracts.  Bail Hotline estimates that it collected approximately

10    $45.2 million from approximately 27,267 cosigners who hadn't been provided the Section 1799.91

11    Notice in the four years preceding the complaint.  McGuire Decl. ¶ 2(a), (b), (d).  In addition to

12    taking money from these cosigners, Bail Hotline sent thousands of them "Settlement Offer

13    Letters" similar to Mr. Abeyta's.  ECF No. 61-2 at 95:9-97:10; *see also* McGuire Decl. ¶ 4.  These

14    letters stated an outstanding balance and told each recipient that "[a]s an indemnity for the bail

15    bond debt of the Defendant . . . you are equally liable for any past due balance."  ECF No. 61-1.

16    The letters also threatened that Bail Hotline would pursue "further collection activity."

17    Mr. Abeyta initially brought three causes of action against Bail Hotline.  Under the UCL,

18    Mr. Abeyta alleged unlawful and unfair conduct insofar as Bail Hotline did not provide cosigners

19    with the Section 1799.91 Notice and continued collecting money from them; he sought restitution

20    of all amounts paid by him and others towards those transactions.  Compl. ¶¶ 36-43.  Mr. Abeyta

21    also alleged that Defendant's collection letters violated the Rosenthal Act (which incorporates the

22    federal Fair Debt Collection Practices Act ("FDCPA"), *see* Cal. Civ. Code § 1788.17), insofar as

23    they allegedly falsely represented the character, amount, and legal status of the debts in question,

24    and threatened to take actions to enforce those debts that could not legally be taken.  *Id.* ¶¶ 44-55.

25    Finally, Mr. Abeyta sought declaratory relief that the agreements were invalid and unenforceable.

26    *Id.* ¶¶ 56-58.

27

28

1

**B.      Defendant's Motion to Transfer Venue and Motion to Dismiss**

2      In response to the complaint, Bail Hotline filed a motion to dismiss for improper venue or

3  to transfer venue, ECF No. 13, and a motion to dismiss for failure to state a claim, ECF No. 14.

4  Plaintiff opposed both motions. *See* ECF Nos. 14 & 19. The Court heard argument on the

5  motions on March 10, 2023, *see* ECF No. 31, and issued order denying them on April 12, 2023

6  and April 20, 2023. *See* ECF Nos. 36 & 37.

7      **C.      Discovery**

8      Plaintiff served an initial set of twenty-one (21) requests for production of documents in

9  December 2022, and Bail Hotline served its responses in mid-March 2023. Salahi Decl. ¶ 5. The

10  parties met-and-conferred about Bail Hotline's objections and the adequacy of its searches for

11  several months. Later, Plaintiff served a second set of 15 requests in February 2024, and a third

12  set of 7 requests in August 2024. *Id*. Ultimately, Plaintiff also took depositions of four 30(b)(6)

13  witnesses and Plaintiff himself sat for deposition. *Id*.

14      Discovery in this case was anything but smooth. Plaintiff undertook significant efforts to

15  secure Defendant's compliance with discovery rules and to obtain the evidence necessary to press

16  this case forward for the Settlement Classes, and in order to have sufficient information to evaluate

17  the strengths and weaknesses of the case for settlement purposes.

18      **D.      Settlement Negotiations**

19      The Parties initially began discussing the possibility of settlement shortly after the Court's

20  orders denying Defendant's motions to dismiss, and attended a mediation on February 26, 2024

21  with the Honorable Carl J. West (retired) of JAMS. Salahi Decl. ¶ 6. To prepare for settlement

22  negotiations, the Parties exchanged information relevant to the class size and the amount in

23  controversy. *Id.* They also briefed their views on the merits and certifiability of a class in

24  submissions to Judge West. *Id.* After a full day of mediation, the Parties were unable to reach an

25  agreement. *Id.* Thereafter, the Parties continued to litigate the case. *Id.* During that time, they

26  continued to exchange offers through Judge West for several months. *Id.* By summer 2024, it

27  appeared that a settlement would not be reached before class certification was briefed and decided.

28  *Id.* Ultimately, however, the Parties reached a tentative agreement in principle the night before the

1  hearing on Plaintiff's motion for class certification, October 3, 2024. *Id.* Over the following

2  weeks, the Parties memorialized their agreement in a term sheet that was executed on October 30,

3  2024, *id.*, and executed a long-form agreement on December 6, 2024, *id.*

4  **III.    SUMMARY OF SETTLEMENT TERMS**

5      The principal terms of the Settlement before the Court are as follows:

6      **A.    Settlement Classes**

7      The Settlement Classes are defined as follows.

8      The "**UCL Settlement Class**" means "all persons who (1) cosigned a bail bond premium

9  financing agreement in California with DMCG, Inc.; (2) were not provided the notice described

10  in California Civil Code Section 1799.91 prior to signing; (3) were not a spouse of the person

11  who received release services in connection with the agreement at the time of signing; and (4)

12  made any premium payment to DMCG, Inc. in connection with the bail bond transaction at any

13  time on or after October 3, 2018." Settlement ¶ 1.26.

14      The "**Rosenthal Act Settlement Class**" means "all persons who (1) cosigned a bail bond

15  premium financing agreement in California with DMCG, Inc.; (2) were not provided the notice

16  described in California Civil Code Section 1799.91 prior to signing; (3) were not a spouse of the

17  person who received release services in connection with the agreement at the time of signing;

18  and (4) to whom DMCG, Inc. sent a collection letter (i.e., settlement offer letters) regarding such

19  bail bond at any time on or after October 3, 2021." Settlement ¶ 1.21. It is expected that

20  members of the Rosenthal Act Settlement Class are also members of the UCL Settlement Class.[1]

21      The proposed Settlement Classes are consistent with the classes Plaintiff moved to

22  certify, *see* ECF No. 60 at 2, and differ from the proposed class alleged in the complaint only

23  insofar as Plaintiff has created subclasses primarily to account for different statutes of limitations

24  (four years under UCL versus 1 year under Rosenthal Act) and remedies (restitution versus

25

26      [1] Excluded from both Classes are "(a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendant, Defendant's subsidiaries, patents, successors,
27  predecessors, and any entity in which Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (c) persons who properly executed and file a
28  timely request for exclusion from one or more of the Settlement Classes; and (d) the legal representatives, successors, and assigns of any such excluded persons." Settlement ¶ 1.24.

1   statutory damages), and to make the class definitions more precise. *Compare* Compl. ¶ 28. The

2   changes are not substantive. *See* N.D. Cal. Procedural Guidance for Class Action Settlements

3   ("Procedural Guidance"), Preliminary Approval § 1(a) (calling for description of "[a]ny

4   differences between the settlement class proposed in the operative complaint").

5           **B.      Settlement Fund**

6           The Settlement requires Bail Hotline to establish a $4,500,000.00 Settlement Fund, out of

7   which class members will be compensated, and, subject to Court approval, attorneys' fees and

8   costs, service awards, and administrative costs will be paid. Settlement ¶ 1.27. If the Settlement

9   is approved, no portion of the Settlement Fund will revert to Bail Hotline. *See* Procedural

10  Guidance § 1(g). Given Bail Hotline's financial situation, the Settlement provides that Bail

11  Hotline shall fund the Settlement in five installments of $900,000 each over the course of four

12  years. Settlement ¶ 2.1(a). As collateral, Bail Hotline has assigned the Settlement Classes a

13  security interest in its commercial property in Riverside, California. *Id.* ¶ 2.1(c). Should Bail

14  Hotline fail to make timely payments, or cure any late payments within 30 days, the Settlement

15  provides Class Counsel with the ability to enforce the security interest. *Id.*

16          **C.      Allocation**

17          The Settlement allocates $250,000 to the Rosenthal Act Settlement Class and the balance

18  of the Fund, after deduction of attorneys' fees and costs, a service award, and settlement

19  administration expenses, to the UCL Settlement Class. Settlement ¶ 2.1(b). Members of the

20  Rosenthal Act Settlement Class will receive an allocation proportional to the number of allegedly

21  unlawful letters that they were sent. *Id.* Members of the UCL Settlement Class will receive a

22  *pro rata* allocation proportional to the amounts they paid towards bail bond premiums during the

23  relevant time period, less any refunds they already received from the Defendant. *Id.* A person

24  who is a member of both Settlement Classes shall receive the sum of the payouts they are

25  entitled to for each Settlement Class. *Id.* If the Court ultimately grants Plaintiff's requests for

26  attorneys' fees, costs, service awards, and administrative fees in full, then each Class Member's

27  average net recovery is expected to be approximately $109.57 for the UCL Class and $25.29 for

28  the Rosenthal Class. Salahi Decl. ¶ 11. Payments will be distributed to Class Members who

elect for electronic payments shortly after each of Defendant's installment payments; however,
Class Members who elect checks in the mail will receive one check after the third installment (in
approximately two years) and a second check after the final installment (in approximately four
years), to help mitigate administrative costs.  Settlement ¶ 2.1(d).

### D.    Prospective Relief

Under the Settlement, Bail Hotline will be required to revise its bail bond forms for
transactions involving a cosigner with a payment plan to place a signature line and date is on the
Section 1799.91 Notice itself, and will be required to place the notice on a separate sheet before
the standard promissory note, as required by Cal. Civ. Code § 1799.92. *See* Settlement ¶ 2.2(a).
Bail Hotline must also stop all attempts to collect any money owed from Settlement Class
Members in connection with an unpaid bail bond premium, including by disabling any automatic
payment plans that may be in effect. *Id.* ¶ 2.2(b)-(c).  The Settlement does not preclude Bail
Hotline from accepting any *voluntary* payments from Settlement Class Members who may wish
to support a debtor, so long as such a payment is not made in response to any request by
Defendant or in connection with any representation by Defendant that such payment is required
or that the class member is obligated to make the payment. *Id.* ¶ 2.2(b).  Defendant will be
required to file a sworn declaration confirming that these measures have been implemented. *Id.*[2]

### E.    Payment of Settlement Notice and Administrative Costs

Payment of notice and administrative costs will come from the Settlement Fund.
Settlement ¶ 1.22.  The proposed Settlement Administrator, Simpluris, Inc., estimates that notice

---

[2] While the Settlement effectively terminates and eliminates any financial obligations a
Settlement Class Member may have with respect to the payment plan for bail bond premium
governed by Section 1799.91, it does not affect any obligations that a Settlement Class Member
may have under a separately-signed indemnity agreement to pay for losses associated with issued
bail bonds.  For example, an indemnitor for a bail bond typically agrees that, if the defendant
fails to appear at trial, they will be liable for fees and costs associated with fugitive recovery or a
summary judgment imposed by a court against the bail bond surety. *See, e.g.*, ECF No. 61-11 at
ABEYTA_000000005.  This affects a relatively small number of class members.  Bail Hotline
estimates that there are approximately 124 summary judgments associated with bond forfeitures
that may still be enforced against class members, and that it has incurred bounty hunter fees that
it may seek to recover from approximately 3,900 class members.  Salahi Decl. ¶ 13.  To
maximize protection of these Class Members, Class Counsel ensured that, as a condition of
settlement, these Class Members will not release or waive any affirmative defense to the
enforceability of any indemnification agreement based on Defendant's failure to provide a
compliant Section 1799.91 Notice. *See* Settlement ¶ 1.18.

1  and administrative costs will be at least $102,704.87.  Brunner Decl. ¶ 4.[3]

2      **F.      Payment of Attorney's Fees, Costs, and Service Award**

3          Prior to the objection deadline, proposed Class Counsel will move for an award of fees

4  and costs.  Without any consideration from Bail Hotline, Class Counsel agreed to limit their

5  request for fees to 25% of the Settlement Fund.  Settlement ¶ 8.1.  Defendant may challenge

6  Class Counsel's request.  *Id.*  Should the Court award less than what Class Counsel request, the

7  balance will remain in the Settlement Fund for distribution to Class Members.  *Id.*  Further, Mr.

8  Abeyta, will petition the Court for a service award in the amount of $5,000.  *Id.*  ¶ 8.2.  Should

9  the Court approve a lower award, the balance will be distributed to Settlement Class Members.

10      **G.      Release of Liability**

11          In exchange for the relief described above, Bail Hotline will obtain a release of "any and

12  all past and present claims or causes of action, including but not limited to those under

13  California's Unfair Competition Law and Rosenthal Act, including violations, claims for

14  injunctions, and all claims for damages, penalties, interest, fees and costs, restitution, equitable

15  relief, and any other claim of relief, whether known or unknown (including 'Unknown Claims'

16  as defined below), arising on or before the date of the judgment from Defendant's failure to

17  include a compliant Section 1799.91 Notice in the underlying bail bond premium payment plan

18  documents.  However, (1) no Settlement Class Member is releasing or waiving in any way any

19  affirmative defense to the enforceability of any indemnification agreement based on Defendant's

20  failure to provide a compliant Section 1799.91 Notice; and (2) to the extent any member of the

21  UCL Settlement Class or the Rosenthal Act Settlement Class timely excludes themselves from

22  one Settlement Class but not the other, the claims brought by the Settlement Class that they have

23  excluded themselves from shall not be released."  Settlement ¶ 1.19.  The released "Unknown

24  Claims" are defined in Paragraph 1.30.  The release is intended to operate no more broadly than

25

26

27  ---
    [3] This estimate is based on a class size of 23,557.  However, just before this filing,
    Defendant notified Plaintiff that the estimate inadvertently excluded certain class members.
    Defendant's revised estimate is 27,267.  *See* McGuire Decl. ¶ 2(b).  This will likely result in
28  slightly higher administrative costs.  Plaintiff will supplement this filing with a revised estimate
    of administrative costs as soon as possible.

1    the doctrine of claim preclusion would were this an individual suit related to allegedly improper

2    renewal fees.  *See* Procedural Guidance § 1(b).

3    **III.    THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASSES**

4            At preliminary approval the parties must show "that the court will likely be able to: (i)

5    approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the

6    proposal." Fed. R. Civ. P. 23(e)(1)(B).  Taking the second prong first, this Court will be able to

7    certify the Settlement Class for purposes of Settlement and entering the final judgment.  Because

8    this settlement secures money damages, the Settlement Class must meet the requirements of Fed.

9    R. Civ. P. 23(a) and the predominance and superiority criteria (minus the requirement of

10    manageability) of Fed. R. Civ. P. 23(b)(3).  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351

11    (2011).  The proposed Settlement Classes here consist of the affected cosigners who made out-of-

12    pocket payments towards disputed bail bond premiums on or after October 1, 2018 (the "UCL

13    Settlement Class") and the affected cosigners who were sent problematic collection letters on or

14    after October 1, 2021 (the "Rosenthal Act Settlement Class").  *See* Section III.A; ¶¶ 1.21, 1.25.

15    Bail Hotline does not oppose certification for settlement purposes only.

16            **A.    The Proposed Settlement Class Is Sufficiently Numerous**

17            Bail Hotline has represented, and discovery has confirmed, that the UCL Settlement

18    Class includes approximately 27,267 individuals, and the Rosenthal Act Settlement Class

19    includes up to 9,886 individuals.  McGuire Decl. ¶ 2(b).  By any measure, numerosity is satisfied

20    because "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  *See also Akaosugi v.*

21    *Benihana Nat. Corp.*, 282 F.R.D. 241, 253 (N.D. Cal. 2012) ("courts generally find

22    the numerosity requirement satisfied when a class includes at least forty members.").

23            **B.    Common Questions Predominate Over Individual Issues**

24            Rule 23(a)(2) requires the presence of questions of law or fact common to the proposed

25    Class.  Commonality is often analyzed alongside Rule 23(b)(3)'s requirement that common

26    questions predominate over any individual questions present in the action.  *See Akaosugi*, 282

27    F.R.D. at 254-55.  Examination of commonality and predominance begins with the elements of

28    the underlying cause of action.  *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804,

1    810 (2011).  Plaintiff's claims are brought under the UCL (for the UCL Settlement Class) and

2    the Rosenthal Act (for the Rosenthal Act Settlement Class).

3         *Consumer Credit Contracts*.  A threshold question for both Classes' claims is whether the

4    payment plan agreements in question constitute consumer credit contracts under California Civil

5    Code § 1799.90(a) (2022).  A contract qualifies when it involves an "extension of credit" allowing

6    the cosigner to satisfy their obligation over a series of monthly payments.  *BBBB Bonding Corp. v.*

7    *Caldwell*, 73 Cal.App.5th 349, 367-68 (2021) (holding that bail bond premium financing

8    agreements constitute consumer credit contracts).  It is undisputed that Bail Hotline used template

9    Promissory Notes for all members of both Classes.  *See* ECF No. 61-1, ECF No. 61-3 at 61:23-

10   62:25, 100:8-102:13, 139:6-13.  The contract provides that the total bail bond premium will be

11   paid in a series of payments labeled "additional down payments" and monthly payments.  *See* ECF

12   No. 61-14 at DMCG 000124.  The answer does not vary from person to person.

13        *UCL Claim*.  The UCL prohibits unfair and unlawful conduct.  Cal. Bus. & Prof. Code

14   §§ 17200.  Whether Defendant's failure to include the Section 1799.91 Notice, and subsequent

15   collection of money from Class Members, was unlawful and unfair are common questions that

16   turn on common evidence, such as Defendant's standard forms, documents, and deposition

17   testimony.  As in other cases, Defendant's conduct was either unlawful and unfair for all class

18   members, or for none.  *See, e.g.*, *Newton v. Am. Debt. Servs., Inc.*, No. C-11-3228-EMC, 2015 WL

19   3614197, at *6, 8-10 (N.D. Cal. June 9, 2015) (holding predominance satisfied for UCL unfairness

20   and unlawfulness prong in case challenging excess fees).  The same is true with respect to each

21   UCL Settlement Class member's right to restitution, which is presumed because the Section

22   1799.91 Notice is material to a reasonable consumer, a question that turns on objective criteria.

23   *See, e.g.*, *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015); *In re Arris Cable*

24   *Modem Consumer Litig.*, 327 F.R.D. 334, 365 (N.D. Cal. 2018); *McAdams v. Monier, Inc.*, 182

25   Cal.App.4th 174, 183 (2010).  Materiality follows from the fact that the Legislature saw fit to

26   require the Section 1799.91 disclosure.  *Cf. Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir.

27   2013); *Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 333 (2011) ; *Hansen v. Newegg.com Ams.,*

28

*Inc.*, 25 Cal.App.5th 714, 730-31 (2018); *Smith v. Keurig Green Mountain, Inc.*, No. 18-cv-06690-HSG, 2020 WL 5630051, at *6 (N.D. Cal. Sept. 21, 2020); *see also* ECF No. 61 at 10-12.

*Rosenthal Act*.  The predominance analysis is also straightforward for the Rosenthal Act Settlement Class, which seeks only statutory damages.  Such claims are routinely certified for class action status.  *See* ECF No. 61 at 13 (citing cases).  The Rosenthal Act incorporates the FDCPA's protections, *see* Cal. Civ. Code § 1788.17, and the FDCPA in turn prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including but not limited to "false[ly] represent[ing] . . . the character, amount, or legal status of any debt," and "threat[ening] to take any action that cannot legally be taken."  15 U.S.C. §§ 1692e(2), (5).  Whether a communication violates these prohibitions is determined according to an "objective analysis" from the perspective of "the least sophisticated debtor," rather than a subjective analysis of whether a particular plaintiff was actually misled.  *See Donahue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010); *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061-62 (9th Cir. 2011); *Koller v. W. Bay Acquisitions, LLC*, No. C 12-00117 CRB, 2012 WL 1189481, at *5 (N.D. Cal. Apr. 9, 2012).  Bail Hotline sent the same Settlement Offer Letter containing the same formulaic and allegedly unlawful language to each member of the Rosenthal Act Settlement Class.  *See* ECF No. 61-2 at 95:9-97:10.  Whether the language of that letter violated the Rosenthal Act and FDCPA is a common question with the same answer for all class members.  The only relief sought—statutory damages—can readily be calculated on a class-wide basis based on objective criteria.  *See* 15 U.S.C. § 1692k(b)(2).

### C.    Mr. Abeyta Is Typical of the Proposed Settlement Classes

The next Rule 23(a) factor is typicality.  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Id.* (quotations omitted).

1    Typicality is met here. Like every other Class Member, Mr. Abeyta was asked to co-sign

2    a bail bond premium financing agreement with Bail Hotline in California but was not provided

3    the requisite disclosure. *See* ECF No. 62 ¶ 3; *see also* ECF No. 61-12. Like every member of

4    the UCL Settlement Class, Mr. Abeyta was charged pursuant to the agreement even though he

5    was allegedly not obligated to pay. *See* ECF No. 62 ¶ 3. And just as with every member of the

6    Rosenthal Act Settlement Class, Bail Hotline sent Mr. Abeyta a Settlement Offer Letter

7    containing alleged misrepresentations about the status of his debt and implicitly threatening to

8    file a lawsuit against him or take other collection actions it could not lawfully take. *Id.* ¶ 6; *see*

9    *also* ECF No. 61-13. The proposed claims for each Settlement Class concern precisely this

10    conduct under legal theories that apply across both Classes. Because his claims arise out of the

11    same conduct as other class members and because he presses the same legal theory for himself as

12    everyone else, Mr. Abeyta satisfies typicality. *See*, *e.g.*, *Juarez v. Social Finance, Inc.*, No. 20-

13    cv-03386-HSG, 2022 WL 17722382, at *4 (N.D. Cal. Dec. 15, 2022) (finding typicality satisfied

14    because "Plaintiffs' claims are both factually and legally similar to those of the putative class");

15    *Cottle v. Plaid Inc.*, 340 F.R.D. 356 (N.D. Cal. 2021) (finding typicality satisfied because

16    "Plaintiffs' claims stem from the same course of conduct and pattern of alleged wrongdoing as

17    the claims of the Class Members").

18    **D.      Mr. Abeyta and His Attorneys Are Adequate Representatives of the**
          **Proposed Settlement Classes**
19

20    Rule 23(a)'s adequacy requirement tests the ability of the named plaintiff and his lawyers

21    to protect the interests of absent class members. "Courts engage in a dual inquiry to determine

22    adequate representation and ask: (1) do the named plaintiffs and their counsel have any conflicts

23    of interest with other class members and (2) will the named plaintiffs and their counsel prosecute

24    the action vigorously on behalf of the class?" *Cottle*, 340 F.R.D. at 371 (quotations omitted).

25    Mr. Abeyta is adequate. He suffers from no conflicts of interest with the absent class

26    members because he was allegedly injured in the same way and by the same conduct as other

27    members of the classes. His interests are therefore aligned with the classes. Moreover, Mr.

28    Abeyta vigorously pursued these representative claims: he worked closely with proposed

1     Settlement Class Counsel to investigate the issues in this case, collected and produced relevant

2     evidence, monitored the proceedings, attended several meetings with his counsel to prepare for a

3     deposition, attended a full-day in-person deposition, supported counsel's efforts to steer the case

4     to a positive resolution, and was available to testify for trial.  Salahi Decl. ¶ 14.

5            Prior to the then-scheduled hearing on Plaintiff's motion for class certification, the Court,

6     *sua sponte* ordered Plaintiff's counsel to address the status of any criminal charges against Mr.

7     Abeyta and any consequent impact on his ability to act as a class representative.  *See* ECF No. 93.

8     As noted at the hearing, the charges discussed in the exhibit flagged by the Court were dismissed

9     on April 29, 2024, and so there were no longer pending charges or criminal trials on the horizon

10    that could impair Mr. Abeyta's ability to fulfill his duties.  Salahi Decl. ¶ 14.

11           Mr. Abeyta's chosen counsel, Edelson PC, is also adequate.  Edelson PC has extensive

12    experience litigating class actions of similar size, scope, and complexity to the instant action.

13    Edelson PC is a national leader in high stakes' plaintiffs' work ranging from class and mass

14    actions to public client investigations and prosecutions.  *See* Firm Resume of Edelson PC, filed

15    at ECF No. 61-15.  The firm has been named by Law360 as a Consumer Protection Group of the

16    Year (2016, 2017, 2019, 2020), a Class Action Group of the Year (2019), a Plaintiff's Class

17    Action Powerhouse (2017, 2018, 2019); similarly, the National Law Journal identified Edelson

18    PC as "Elite Trial Lawyers" in Consumer Protection (2020, 2021) and Class Action (2021)

19    categories.  *Id.* at 7.  The firm has secured hundreds of millions of dollars of relief in important

20    consumer protection matters.  *Id.* at 7, 12.  Proposed Class Counsel diligently investigated,

21    prosecuted, and dedicated substantial resources to the claims in this action and will continue to

22    do so throughout its pendency.  Salahi Decl. ¶ 15.  The record discloses no conflicts of interest

23    and proposed Class Counsel are aware of none.  *Id.*

24          **E.**      **Class Treatment Is Superior to the Alternatives**

25           Turning to Rule 23(b)(3), the only remaining criterion to consider is whether a class

26    action is a superior way to resolve this controversy.  (Manageability is irrelevant in this

27    settlement posture.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

28

A class action is clearly the superior means of resolving this litigation. The proposed Settlement Classes together consist of over 27,250 individuals, the vast majority of whom lost relatively small sums that would make individual litigation or arbitration cost prohibitive. "In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 515 (9th Cir. 2013). That is likely why class members have not demonstrated any interest in individually controlling this litigation, or in seeking relief individually outside of this lawsuit. *See* Fed. R. Civ. P. 23(b)(3)(A)-(B) (outlining these as factors relevant to superiority). And requiring these class members to individually litigate would needlessly clog the courts with a multitude of identical disputes, as opposed to the streamlined efficiency of this single class proceeding. *Cottle*, 340 F.R.D. at 372 (finding superiority established where "the range of issues is limited and individual cases addressing these issues would likely address the same wrongful conduct and use the same supporting evidence"). Superiority is therefore satisfied.

For these reasons, the Court should conditionally certify the Settlement Classes.

## IV.     THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

In addition to showing that the Settlement Classes are certifiable, the parties must also show that the Court "will likely be able to . . . approve the [settlement] proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B)(i). Rule 23(e)(2) requires the Court to find that the settlement is "fair, reasonable, and adequate" after considering whether: (A) the class representative and class counsel have adequately represented the class; (B) the settlement was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). Also, because of the pre-certification posture of this case, the Court must consider the factors identified by the Ninth Circuit in *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011). Because the *Bluetooth* factors are relevant to one of the procedural concerns highlighted by Rule 23(e), the two tests are discussed together. Ultimately, this Settlement easily clears the heightened bar set for pre-certification settlements.

**A.      Mr. Abeyta and Proposed Class Counsel Adequately Represented the Classes**

The first Rule 23(e) factor concerns adequate representation.  The focus of this analysis is "on the actual performance of counsel acting on behalf of the class" throughout the litigation and in settlement negotiations.  Fed. R. Civ. P. 23(e) Advisory Committee's Note to 2018 Amendment; *see Gumm v. Ford*, No. 5:15-CV-41-MTT, 2019 WL 479506 at *3 (M.D. Ga. Jan. 17, 2019).  This factor overlaps significantly with the adequacy requirement of Rule 23(a).  *See O'Connor v. Uber Techs., Inc.*, No. 13-cv-03826-EMC, 2019 WL 1437101, at *6 (N.D. Cal. Mar. 29, 2019).  In considering this factor, courts should further examine whether plaintiff and class counsel had adequate information to negotiate a class-wide settlement.  Fed. R. Civ. P. 23(e) Advisory Committee's Note to 2018 Amendment.  Ultimately, this factor is generally satisfied where the named plaintiff and class counsel "have prosecuted the case with diligence and success." *In re Snap Inc. Sec. Litig.*, No. 2:17-cv-0367-SVW, 2021 WL 667590, at *1 (C.D. Cal. Feb. 18, 2021).

Here, given the relatively advanced posture of this case, counsel had the information necessary to craft a fair settlement.  In discovery, Class Counsel obtained sufficient information about the total number of persons affected by the practices at issue, the total sums taken from them by Bail Hotline, and the total number of collection letters sent to them, information that allowed Class Counsel to understand the proposed classes' potential recovery, should the case proceed to trial.  *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (holding that in light of "extensive discovery," "the district court could find that counsel had a good grasp on the merits of their case before settlement talks began").  A settlement was not reached until Defendant had produced materials responsive to Plaintiffs' requests for production of documents, and four of Defendant's corporate witnesses had been deposed.  Salahi Decl. ¶ 7.  Moreover, class certification had been fully briefed by the parties, so the parties were very familiar with the strengths, weaknesses, and risks of continued litigation.  *Id.*

1

**B.** **The Settlement Was Negotiated at Arm's Length and There Are No Indicia of Collusion**

2

3      The second Rule 23(e) factor asks whether the proposed settlement was negotiated at arm's

4  length. "This inquiry aims to root out settlements that may benefit the plaintiffs' lawyers at the

5  class's expense[]." Newberg & Rubenstein on Class Actions § 13:50. The concern, which is also

6  embodied in this Circuit's *Bluetooth* factors, is that "the defendant will dangle such a healthy fee

7  in front of the plaintiffs' lawyer that they will settle the class's claims at a discount." *See id.*

8      Here, both sides were represented by counsel with significant class action experience.

9  Salahi Decl. ¶ 8. Additionally, the parties enlisted the assistance of Judge West of JAMS, who

10  ordered the parties to prepare mediation briefs and who supervised the parties' first attempt at

11  mediation. *Id.* Although that mediation was not successful, Judge West continued to supervise

12  negotiations for several months, and the parties ultimately settled along the same contours as those

13  discussed with Judge West through a contentious process that lasted several months. *Id.*

14      These lengthy negotiations demonstrate that the proposed Settlement is the product of

15  arm's-length negotiations. *See Cmty. Res. for Indep. Living v. Mobility Works of Cal., LLC*, 533

16  F.Supp.3d 881, 889 (N.D. Cal. 2020) ("serious, informed, non-collusive negotiations" taking place

17  over an "extended" period weighed in favor of settlement approval); *Vianu v. AT&T Mobility*

18  *LLC*, No. 19-cv-03602-LB, 2022 WL 16823044, at *7 (N.D. Cal. Nov. 8, 2022) (finding that

19  negotiations aided by an experienced mediator weighed in favor of settlement approval).

20  Moreover, the Settlement bears none of the "subtle signs of implicit collusion" that the Ninth

21  Circuit has cautioned district courts to guard against. *Roes, 1-2 v. SFBC Mgmt., LLC*, 944 F.3d

22  1035, 1049-50 (9th Cir. 2019). These factors, commonly called the *Bluetooth* factors, are: (1)

23  "when counsel receive a disproportionate distribution of the settlement;" (2) "when the parties

24  negotiate a 'clear sailing' arrangement" (i.e., an arrangement where defendant will not object to a

25  certain fee request by class counsel); and (3) "when the parties create a reverter that returns

26  unclaimed [funds] to the defendant." *Bluetooth*, 654 F.3d at 947.

27      None of those factors appear here. First, fees were never discussed with the Defendant,

28  and Class Counsel agreed to limit to 25% without any consideration. Salahi Decl. ¶ 9; *see*

1    Settlement ¶ 8.1.  This 25% figure is the "benchmark" fee award in this Circuit, and will only be

2    awarded if the Court determines it is reasonable.  *See Vizcaino v. Microsoft Corp.*, 97 F.3d 1187

3    (9th Cir. 1996).  Similar and larger proposed awards have been found not to be indicative of

4    collusion.  *See, e.g.*, *Luz Bautista-Perez v. Juul Labs, Inc.*, No. 20-cv-01613-HSG, 2022 WL

5    307942, at *6 (N.D. Cal. Feb. 2, 2022) (approving 42% fee award); *Cottle*, 340 F.R.D. at 378

6    (proposed 25% award was "presumptively reasonable"); *In re LinkedIn User Privacy Litig.*, 309

7    F.R.D. 573, 589 (N.D. Cal. 2015) (32% fee proposal not disproportionate).  Although the Court

8    will determine the appropriate amount of attorney's fees at a later time, the reasonableness of a

9    25% award is confirmed by Class Counsel's lodestar.  *See* Procedural Guidance § 6 ("Although

10   attorneys' fee requests will not be approved until the final approval hearing, class counsel should

11   include information about the fees and costs (including expert fees) they intend to request, their

12   lodestar calculation (including total hours), and resulting multiplier in the motion for preliminary

13   approval.").  Class Counsel devoted over 965 hours to the litigation, at a lodestar of approximately

14   $513,421.00.  Salahi Decl. ¶ 15.  This represents a multiplier of 2.19, which is well within the

15   realm of reasonableness.  *See In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1048 (N.D. Cal.

16   2008) (multipliers between 1 and 4 are typical).  Finally, Class Counsel expect to request

17   reimbursement of litigation costs of approximately $29,570.53 for standard litigation costs like

18   deposition transcripts, filing and service fees, and mediation fees.  Class Counsel will submit more

19   detail in their motion for attorney's fees and costs.

20          Second, there is no clear sailing agreement here.  Bail Hotline retains the right to object to

21   any proposed fee award Class Counsel petitions for.  *See* Settlement ¶ 8.1.

22          Third, there is no reverter or kicker clause.  All class members will be issued their

23   payments without any need to submit a claim.  If any check goes uncashed, remaining funds will

24   be redistributed to the class unless it is not economically feasible to do so, at which point left over

25   funds may be given to a *cy pres* beneficiary subject to Court approval.  Settlement ¶ 2.1(h).

26   Moreover, should the Court award less in fees, costs, or service awards than what Mr. Abeyta and

27   proposed Settlement Class Counsel seek, the difference will remain in the Settlement Fund for

28   distribution to Class Members.  Settlement ¶ 8.1.  *See also* Procedural Guidance § 1(g) (directing

1  litigants to discuss at preliminary approval whether the proposed settlement contains any provision

2  for reversion of funds to the defendant).

3      Thus, the terms of the Settlement contain none of the subtle signs of collusion that the

4  Ninth Circuit has cautioned against, confirming that the Settlement was negotiated at arm's length.

5      **C.    The Relief Obtained Is Meaningful and Significant Compared to Similar**
       **Settlements**

6

7      The next Rule 23(e) factor directs the Court to consider whether "the relief provided for

8  the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the

9  effectiveness of any proposed method of distributing relief to the class, including the method of

10 processing class-member claims; (iii) the terms of any proposed award of attorney's fees,

11 including timing of payment; and (iv) any agreement required to be identified under Rule

12 23(e)(3)."  Similarly, this District's Procedural Guidance for Class Action Settlements asks

13 litigants at the preliminary approval stage to discuss "the class recovery under the settlement

14 (including details about and the value of injunctive relief), the potential class recovery if plaintiffs

15 had fully prevailed on each of their claims, claim by claim, and a justification of the discount

16 applied to the claims."  Procedural Guidance § 1(c).

17     Here, the Settlement secures a reasonable payment for the Classes that is significantly

18 better than the only comparable settlement, avoids the risks associated with Defendant's inability

19 to satisfy a judgment, and also avoids other risks attendant to continued litigation of the claims.

20     Under the proposed Settlement, Bail Hotline will create a non-reversionary cash fund of

21 $4.5 million, representing nearly 10% of all bail bond premiums paid by cosigners and not

22 previously refunded as of the time of settlement.  Salahi Decl. ¶ 12.  This represents a 66% higher

23 rate of recovery than the only similar settlement involving a bail bond company, All-Pro Bail

24 Bonds, which recovered only 6% of the class's out-of-pocket payments.  *See Dominguez*, *supra*.

25 Including *Dominguez*, class action settlements at similar recovery percentages are often approved

26 as fair and reasonable, particularly when, as here, there are specific reasons justifying the recovery

27 rate.  *See, e.g.*, *Kissel v. Code 42 Software, Inc.*, No. SACV 15-1936-JLS (KES), 2017 WL

28 10560526, at *8 (C.D. Cal. Oct. 4. 2017) (granting preliminary approval of settlement reflecting

1   6% recovery); *Ferrell v. Buckingham Prop. Mgmt.*, 2020 WL 4364647, at *2 (E.D. Cal. July 30,

2   2020) (same re: 5.3% recovery); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 954, 459 (9th

3   Cir. 2000) ("It is well-settled that a cash settlement amounting to only a fraction of the potential

4   recovery does not *per se* render the settlement inadequate or unfair.").

5          Here, there are plenty of reasons that led Class Counsel to conclude that securing the

6   instant settlement was in the best interests of the Classes.  Even setting aside litigation risks that

7   will be discussed in a moment, it became clear over the course of the litigation and the parties'

8   settlement negotiations that Defendant lacked the ability to satisfy any significant judgment in this

9   litigation.  As a general matter, the cash bail bond industry in California has faced numerous

10  threats to its business models in recent years, including a California Supreme Court ruling in 2021

11  holding that courts cannot set bail amounts higher than what a person can afford.  *See In re*

12  *Humphrey*, 11 Cal.5th 135 (2021). Lower bail bond rates mean lower premiums that are paid to

13  companies like Bail Hotline.  Additionally, criminal justice reform advocates have mobilized

14  successfully to reduce reliance on cash bail in localities throughout the state.  *See*, *e.g.*, *Zero-bail*

15  *policy takes effect in Los Angeles County, ending traditional cash system*, ABC 7 (Oct. 2, 2023),

16  http://tinyurl.com/lazerobail.  While these efforts have advanced the rights and interests of low-

17  income people caught up in the criminal justice system, they have adversely affected the economic

18  interests and sustainability of the cash bail bond industry, which is wholly dependent on the

19  presence of a population that cannot afford to pay bail out of pocket.

20         Here, the trend of declining business for the bail industry, including Defendant, has been

21  compounded by other liabilities severely limiting Bail Hotline's cashflow.  *See* Salahi Decl. ¶ 10.

22  Simply put, in these circumstances, a judgment would have bankrupted Defendant, and Defendant

23  could not afford a higher settlement amount considering its operating expenses and outstanding

24  liabilities.  *Id.*  Courts recognize that such circumstances favor settlement.  *See*, *e.g.*, *Cavazos v.*

25  *Salas Concrete, Inc.*, No. 1:19-cv-00062-DAD-EPG , 2022 WL 2918361, at *5-6 (E.D. Cal. July

26  25, 2022) (granting final approval to settlement securing 5.8% because, *inter alia*, "a larger

27  recovery here would likely not be possible due to defendant's financial condition"); *Wright v.*

28  *Linkus Enters., Inc.*, 259 F.R.D. 468, 476 (E.D. Cal. 2009) (granting preliminary approval to

settlement where "the financial condition of Defendants creates the possibility that Defendants could not withstand greater liability than the proposed settlement amount"); *Vu v. I Care Credit, LLC*, No. CV 17-04609 RAO, 2022 WL 22871480, at \*9 (C.D. Cal. Nov. 4, 2022) (noting that "Defendant's financial condition is again an important consideration" because "Plaintiff's counsel had to negotiate a settlement amount that Defendant could pay so that class members could receive any monetary relief at all").

Defendant's financial difficulties are also the reason why the Settlement Fund must be funded in installments, a practice that is regularly accepted by courts. *See*, *e.g.*, *Rodriguez v. M.J. Bros, Inc.*, No. 1:18-cv-00252-LJO-SAB, 2019 WL 3943856, at \*5 (E.D. Cal. Aug. 21, 2019) (granting final approval of class action settlement to be funded in 6 installments); *North v. Superior Hauling & Fast Transit, Inc.*, No. EDCV 18-2564 JGB (KKx), 2020 WL 12967999, at \*3 (C.D. Cal. Dec. 7, 2020) (granting final approval of class action settlement to be funded in installments over 4 years); *Etter v. Thetford Corp.*, No. SACV 13-00081-JLS (RNB), 2016 WL 11745096, at \*3 (C.D. Cal. Oct. 24, 2016) (granting final approval with four annual installments). To safeguard against the risk that Defendant may nevertheless become insolvent, the Settlement also requires Defendant to put up its commercial property in Riverside, California as collateral. Settlement ¶ 2.1(c). Under this provision, if Defendant fails to make a timely payment within 30 days of being notified of a breach, the full amount of the Settlement becomes immediately payable and due, and Class Counsel may, to the benefit of the Settlement Classes, take steps to enforce the security interest in Defendants' property.

In addition, traditional criteria regarding the risks and uncertainty associated with ongoing litigation also factored into Class Counsel's judgment. Although Plaintiff successfully defeated Defendant's motion to dismiss and was confident, he could defeat any motion for summary judgment and prevail at trial, significant risks still remained on the merits. *First*, a critical premise of Plaintiff's claims is that Defendant's failure to provide cosigners with the Section 1799.91 Notice not only rendered the debt obligations unenforceable, but also prevented a debt obligation from being formed in the first place. While this Court appeared to agree with that interpretation at the motion to dismiss stage, and Judge Thompson initially reached a similar conclusion in the

1    *Medina v. Two Jinn, Inc.* matter, *Medina* was recently re-assigned to the Honorable Rita F. Lin,

2    who reversed the earlier holdings and concluded that Section 1799.91 does not render the debts

3    "invalid," but rather simply unenforceable through operation of Section 1799.95.  *See Medina v.*

4    *Two Jinn, Inc.*, No. 22-cv-02540-RFL, 2024 WL 4485592, at *2 (N.D. Cal. Mar. 28, 2024).  If this

5    Court were to change its view, too, Plaintiff and the Settlement Classes' claims could have been

6    substantially weakened if not eliminated.

7         <u>Second</u>, unlike this Court, both Judge Thompson and Judge Lin refused to allow the

8    plaintiffs in their cases to seek restitution of amounts paid under the UCL, reasoning that the

9    plaintiffs had received a benefit whose value exceeded what they paid—the release of their loved

10   ones.  *Medina*, 2024 WL 4485592, at *3.  Although this Court refused to dismiss Plaintiff's UCL

11   claim on that basis, it left open the question what amount of restitution, if any, could be obtained

12   for a later stage.  *See Abeyta v. DMCG, Inc.*, No. 22-cv-07089-SI, 2023 WL 3047054, at *2 (N.D.

13   Cal. Apr. 20, 2023) ("DMCG's arguments about restitution raise factual questions that cannot be

14   resolved at this stage of the litigation[.]").

15        Further, the Court might have required Plaintiff and proposed UCL Class Members to

16   adduce evidence that they would not have helped their friends or loved ones out of jail if they had

17   received the Section 1799.91 Notice, and may not have given weight to their testimony to that

18   effect.  Indeed, in opposition to class certification, Defendant introduced testimony from certain

19   individuals who claimed the notice would have made no difference to their decision to cosign.

20   While Plaintiff disputed the credibility of the declarations and moved to strike them given the

21   questionable and misleading circumstances under which they were obtained, there was still risk at

22   the merits stage that Plaintiff and the proposed UCL Class Members would be unable to obtain

23   any amount of restitution.  This factor strongly supports the proposed Settlement.

24        <u>Third</u>, even assuming there was *no* risk to the proposed Rosenthal Act Settlement Class's

25   claims (and, as will be explained, there was), this claim was capped at a maximum recovery of

26   $500,000 or 1% of Defendant's net worth (likely pushing it much lower given its financial

27   condition).  *See* 15 U.S.C. § 1692k(a)(2)(B).  Under the proposed Settlement, the Rosenthal Act

28   Settlement Class (which largely overlaps with the UCL Restitution Class) will secure $250,000,

representing a strong recovery.  Settlement ¶ 2.1(b). In any case, there was still some risk associated with this claim.  Plaintiff premised this claim *both* on the letters' misleading assertion that he and other class members owed a debt, *and* on their implicit threat to engage in unlawful activity, like suing him or other class members.  However, if the Court were to follow Judge Lin's analysis, then the theory based on misleading statements may have been lost.  *See Medina*, 2024 WL 4485592, at *2 ("Because the bail bonds agreements remain valid though unenforceable, statements that Plaintiffs owed money under those agreements were not deceptive or misleading as a matter of law.").  Further, the trier of fact may have disagreed that statements in the letters contained an implicit threat of litigation, potentially eliminating the second theory of liability under the Rosenthal Act.

In short, there are ample reasons justifying the settlement recovered here—Defendant's financial condition, risk that the Court might follow the legal analysis adopted by Judge Lin, and risk that the relevant trier of fact either may disbelieve Plaintiff and class members' assertions about whether they would have cosigned the bail bonds or made payments had they received the disclosure, or disagree that the various Settlement Offer Letters implicitly threatened enforcement of unenforceable debts.  In light of these significant risks, the proposed Settlement is more than fair, reasonable, and adequate, especially given that payments will be sent automatically to each class member's last known address without any requirement to submit a claim form.  *See Taafua v. Quantum Glob. Techs., LLC*, No. 18-cv-06602-VKD, 2020 WL 4732342, at *7 (N.D. Cal. Aug. 14, 2020) ("Considering the potential risks and costs of proceeding to trial, as well as the relative ease with which class members may receive their funds, at this stage the Court is satisfied that the settlement consideration is adequate.").

Finally, the Settlement's proposed attorney's fees are reasonable.  As discussed above, the Settlement contemplates that Class Counsel will seek a benchmark fee award of 25%, which would not result in a disproportionate distribution to Class Counsel.  Moreover, the Court retains the authority to reduce any fee award to ensure that it is reasonable.  Thus, the relief secured by the Settlement demonstrates that the Settlement is fair and reasonable.[4]

---

[4] There are no agreements required to be identified under Fed. R. Civ. P. 23(e)(3).

1        **D.      The Settlement Treats Class Members Equitably**

2              The final Rule 23(e) factor concerns whether the proposed settlement treats class

3      members equitably relative to each other.  The Settlement easily passes this test, as Settlement

4      Class Members' recovery is calibrated to how much they were charged for bail bond premiums

5      (for the UCL Settlement Class) and how many misleading and threatening letters they were sent

6      (for the Rosenthal Act Settlement Class).  *See*, *e.g.*, *In re Omnivision Techs., Inc.*, 559 F.Supp.2d

7      at 1045 ("It is reasonable to allocate the settlement funds to class members based on the extent of

8      their injuries or the strength of their claims on the merits.").  This type of pro rata allocation is

9      fair and reasonable.

10             Finally, while the Settlement proposes to issue a service award to the Named Plaintiff,

11     Mr. Abeyta, that does not automatically indicate inequitable treatment.  Such awards are

12     commonplace, and serve to recognize the valuable efforts of a class representative, without

13     which this type of representative litigation and class settlement could not even exist.  As noted

14     above, Mr. Abeyta expended substantial efforts in support of the Classes.  Salahi Decl. ¶ 14.

15     Under the Settlement, these efforts permit Mr. Abeyta to petition the Court for an award of up to

16     $5,000.  This is on the lower end of incentive awards in this District, constitutes about 0.11% of

17     the proposed Settlement Fund, and is presumptively reasonable.  *See*, *e.g.*, *In re Facebook*

18     *Biometric Info. Privacy Litig.*, No. 21-15553, 2022 WL 822923, at *2 (9th Cir. Mar. 17, 2022)

19     (noting that the Ninth Circuit "regularly uphold[s] incentive awards" of $5,000).  Moreover, the

20     Court will retain the authority to reduce or even reject the proposed service award.  Thus, this

21     additional allocation of funds is equitable.

22             Thus, the instant proposed Settlement warrants preliminary approval.

23     **V.      THE PROPOSED NOTICE COMPLIES WITH DUE PROCESS AND RULE 23**

24             Finally, once the Court has determined that the Settlement should be preliminarily

25     approved, the Court must order that the parties direct notice of the Settlement to the Settlement

26     Class.  *See* Fed. R. Civ. P. 23(e)(1).  The parties must provide the absent class with the "best

27     notice practicable" under the circumstances.  *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir.

28     1994).  While this standard does not demand individual notice to every class member, it requires

"individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2); *see Schneider v. Chipotle Mexican Grill*, 336 F.R.D. 588, 596 (N.D. Cal. 2020).

The parties here have agreed to a comprehensive Notice Plan designed to ensure individual notice to all, or nearly all, of the Settlement Classes. Defendant will provide the Settlement Administrator with contact information, including name, e-mail address, and last known mailing address for every class member for whom the information is available, in addition to the amounts each class member paid towards bail bond premiums and the number of letters they were sent. Settlement ¶ 4.1. Direct notice via e-mail is the principal form of notice contemplated by the Settlement. *Id.* ¶ 4.3. The proposed e-mail notice is attached as Exhibit A to the Settlement. If no e-mail address is available, or if emails bounce, then the Settlement Administrator will send postcard notice via U.S. mail to the class member's last known address, after running it through the National Change of Address database. Settlement ¶ 4.3. The proposed postcard notice is attached as Exhibit B to the Settlement. Finally, a long-form notice with more information will also be made available on a settlement website. Settlement ¶ 4.5. The long-form notice is attached as Exhibit C to the Settlement. These combined methods should deliver notice of this Settlement to nearly all members of the Settlement Class, well above what is required by Due Process and Rule 23.

Moreover, mindful of both the requirements of Rule 23, *see In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 945-47 (9th Cir. 2015), and this District's Procedural Guidance on Class Action Settlements, the parties drafted the notice to provide—in plain English, as free from legalese as is possible—sufficient information to Settlement Class Members about the benefits available under the Settlement, how to object to the Settlement, and how to opt out. The proposed notice is also designed on top of state of the art templates developed by the Impact Fund's Notice Project, an "initiative to improve access to justice in class action lawsuits by helping class action litigators send better class notices."[5] "The Notice Project templates are visually appealing and use visual learning tools to help class members parse complex legal

---

[5] https://www.impactfund.org/notice-project.

notices."[6]  The design of these notices incorporates best practices developed through the Impact Fund's original research on comprehensibility and effectiveness of class action notices; other courts have approved the format of its notices, too.  *See, e.g., In re JUUL Labs, Inc. Mktg. Sales Prac., & Prods. Liab. Litig.*, No. 19-md-02913 (N.D. Cal. Jan. 30, 2023), ECF No. 3779; *Clancy v. The Salvation Army*, No. 1:22-cv-01250 (N.D. Ill. May 11, 2023), ECF No. 108.  Class Counsel modified them to ensure that critical details about the Settlement were available in all formats.

To effectuate this Notice Plan, the parties have selected Simpluris, Inc. as Settlement Administrator.  Class Counsel solicited three bids for the role of settlement administrator, and received three proposals.  Salahi Decl. ¶ 16.  The Simpluris proposal was the most thorough and cost-effective—Simpluris estimates that administrative costs for this Settlement will total at least $102,704.87, *see* supra n. 3, which amount is to be paid out of the Settlement Fund.  *Id*.  In addition, and as explained more fully in the Declaration of Meagan Brunner, Simpluris is Soc2 compliant, has numerous controls in place to ensure the security of class member personal data, and has the standard suite of relevant insurance.  *See* Procedural Guidance § 2(a), (b).  Edelson PC has engaged Simpluris in sixteen other matters within the past two years, and has considerable experience working with its team to effectively administer class settlements.  Salahi Decl. ¶ 15; *see* Procedural Guidance § 2(a).

The Court should therefore approve the proposed form and manner of notice, and order that notice be disseminated to the absent class.

## VI.    CONCLUSION

The court should certify the proposed Settlement Classes for settlement purposes, appoint Mr. Abeyta to represent the Settlement Classes, appoint Rafey S. Balabanian, Yaman Salahi, and Natasha Fernández-Silber of Edelson PC as Class Counsel, preliminarily approve the Settlement, and order that notice be disseminated to class members.

---

[6] *Id.*

1  Date: December 6, 2024                    By: */s/ Yaman Salahi*

2                                            Rafey S. Balabanian (SBN 315962)
                                             rbalabanian@edelson.com
3                                            Yaman Salahi (SBN 288752)
                                             ysalahi@edelson.com
4                                            EDELSON PC
                                             150 California Street, 18th Floor
5                                            San Francisco, California 94111
                                             Tel: 415.212.9300
6                                            Fax: 415.373.9435

7                                            Natasha J. Fernández-Silber (*pro hac vice*)*
                                             nfernandezsilber@edelson.com
8                                            EDELSON PC
                                             350 North LaSalle Street, 14th Floor
9                                            Chicago, Illinois 60653
                                             Tel: 312.589.6370
10                                           Fax: 312.589.6378
                                             * Admitted in Michigan and New York only
11
                                             *Attorneys for Plaintiff Robert Abeyta and the*
12                                           *proposed Settlement Classes*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28