Yaman Salahi (SBN 288752)
yaman@salahilaw.com
SALAHI PC
505 Montgomery St., 11th Floor
San Francisco, California 94111
Tel: (415) 236-2352

Rafey S. Balabanian (SBN 315962)
Natasha J. Fernández-Silber (*pro hac vice*)*
nfernandezsilber@edelson.com
EDELSON PC
150 California St., 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435
* Admitted in Michigan and New York only

*Settlement Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBERT ABEYTA, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>DMCG, INC., a California corporation,<br><br>        Defendant. | CASE NO.: 3:22-cv-07089-SI<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF A CLASS ACTION SETTLEMENT**<br><br>Date: May 2, 2025<br>Time: 10:00am<br>Judge: Honorable Susan Illston<br>Courtroom: 1, 17th Floor |

## TABLE OF CONTENTS

I.     **INTRODUCTION** ............................................................................................1

II.    **BACKGROUND** ..............................................................................................2

III.   **SUMMARY OF SETTLEMENT TERMS** ......................................................2

     A.    Settlement Classes ...................................................................................2

     B.    Settlement Fund ........................................................................................3

     C.    Allocation .................................................................................................3

     D.    Prospective Relief ...................................................................................4

     E.    Payment of Settlement Notice and Administrative Costs ......................4

     F.    Payment of Attorney's Fees, Costs, and Service Award.........................5

     G.    Release of Liability .................................................................................5

III.   **THE COURT SHOULD CONFIRM CERTIFICATION OF THE SETTLEMENT CLASSES**.........................................................................6

III.   **NOTICE TO THE CLASS COMPORTED WITH DUE PROCESS** ...........6

III.   **THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL**............7

     A.    Mr. Abeyta and Class Counsel Adequately Represented the Classes....8

     B.    The Settlement Was Negotiated at Arm's Length and There Are No Indicia of Collusion ..................................................................................9

     C.    The Relief Obtained Is Meaningful and Significant Compared to Similar Settlements ...............................................................................11

     D.    The Settlement Treats Class Members Equitably ................................16

     E.    There Are No Objections or Opt Outs .................................................16

IV.   **CONCLUSION**..............................................................................................17

# TABLE OF AUTHORITIES

## CASES

*Abeyta v. DMCG, Inc.*,
No. 22-cv-07089-SI, 2023 WL 3047054 (N.D. Cal. Apr. 20, 2023) ................................ 14

*Betancourt v. Advantage Human Resourcing, Inc.*,
2016 WL 344532 (N.D. Cal. Jan. 28, 2016) ......................................................... 7

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017)......................................................................... 7

*Cavazos v. Salas Concrete, Inc.*,
2022 WL 2918361 (E.D. Cal. July 25, 2022) ................................................... 12

*Churchill Vill. L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004)..................................................................... 8, 11

*Cmty. Res. for Indep. Living v. Mobility Works of Cal., LLC*,
533 F.Supp.3d 881 (N.D. Cal. 2020) ............................................................ 10

*Dominguez v. All-Pro Bail Bonds, Inc., et al.*,
No. 21CV381890 (Cal. Super. Ct. Santa Clara October 18, 2023)..................................... 1

*Etter v. Thetford Corp.*,
No. SACV 13-00081-JLS (RNB), 2016 WL 11745096 (C.D. Cal. Oct. 24,
2016).................................................................................................... 13

*Ferrell v. Buckingham Prop. Mgmt.*,
2020 WL 4364647 (E.D. Cal. July 30, 2020) ................................................... 12

*Gumm v. Ford*,
No. 5:15-CV-41-MTT, 2019 WL 479506 (M.D. Ga. Jan. 17, 2019)............................ 8

*In re Bluetooth Headset Products Liability Litigation*,
654 F.3d 935 (9th Cir. 2011)........................................................................ 8

*In re Facebook Biometric Info. Privacy Litig.*,
No. 21-15553, 2022 WL 822923 (9th Cir. Mar. 17, 2022)............................... 16

*In re Humphrey*,
11 Cal.5th 135 (2021)................................................................................ 12

*In re LinkedIn User Privacy Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) ................................................................. 10

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 954 (9th Cir. 2000)....................................................................... 12

*In re Snap Inc. Sec. Litig.*,
No. 2:17-cv-0367-SVW, 2021 WL 667590 (C.D. Cal. Feb. 18, 2021) ............................ 9

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Prac., & Prods.
Litig.*, 736 Fed. Appx. 639 (9th Cir. 2018)........................................................... 7

*Kissel v. Code 42 Software, Inc.*,
    No. SACV 15-1936-JLS (KES), 2017 WL 10560526 (C.D. Cal. Oct. 4.
    2017)............................................................................................................... 12

*Luz Bautista-Perez v. Juul Labs. Inc.*,
    No. 20-cv-01613-HSG, 2022 WL 307942 (N.D. Cal. Feb. 2, 2022) ................ 10

*Medina v. Two Jinn. Inc.*,
    No. 22-cv-02540-RFL, 2024 WL 4485592 (N.D. Cal. Mar. 28, 2024) ............ 14

*North v. Superior Hauling & Fast Transit, Inc.*,
    No. EDCV 18-2564 JGB (KKx), 2020 WL 12967999 (C.D. Cal. Dec. 7,
    2020).............................................................................................................. 13

*O'Connor v. Uber Techs., Inc.*,
    No. 13-cv-03826-EMC, 2019 WL 1437101 (N.D. Cal. Mar. 29, 2019)............ 8

*Rodriguez v. M.J. Bros, Inc.*,
    No. 1:18-cv-00252-LJO-SAB, 2019 WL 3943856 (E.D. Cal. Aug. 21,
    2019).............................................................................................................. 13

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ......................................................................... 9

*Roes, 1-2 v. SFBC Mgmt., LLC*,
    944 F.3d 1035 (9th Cir. 2019) ....................................................................... 10

*Taafua v. Quantum Glob. Techs., LLC*,
    No. 18-cv-06602-VKD, 2020 WL 4732342 (N.D. Cal. Aug. 14, 2020) ......... 15

*Vianu v. AT&T Mobility LLC*,
    No. 19-cv-03602-LB, 2022 WL 16823044 (N.D. Cal. Nov. 8, 2022) ............. 10

*Vizcaino v. Microsoft Corp.*,
    97 F.3d 1187 (9th Cir. 1996) ......................................................................... 10

*Vu v. I Care Credit, LLC*,
    No. CV 17-04609 RAO, 2022 WL 22871480 (C.D. Cal. Nov. 4, 2022)......... 13

*Wright v. Linkus Enters., Inc.*,
    259 F.R.D. 468 (E.D. Cal. 2009).................................................................... 13

**STATUTES**

15 U.S.C. § 1692k(a)(2)(B)......................................................................................... 15

Cal. Civ. Code § 1799.91(a).......................................................................................... 1

Cal. Civ. Code § 1799.92 .............................................................................................. 4

Cal. Civ. Code § 1799.95 ............................................................................................ 14

**RULES AUTHORITIES**

Fed. R. Civ. P. 23(e)..................................................................................................... v

Fed. R. Civ. P. 23(e) Advisory Committee's Note to 2018 Amendment....................... 8

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on May 2, 2025, at 10:00 a.m., or at such other time as may be set by the Court, Plaintiff Robert Abeyta will appear, through counsel, before the Honorable Susan Illston or any Judge sitting in her stead, in Courtroom 1, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, and then and there, respectfully move the Court, pursuant to Federal Rule of Civil Procedure 23(e), to grant final approval of a proposed class action settlement reached between Plaintiff and Defendant DMCG, Inc. on behalf of two Settlement Classes.

Plaintiff's motion is based upon this Notice, this Memorandum of Points and Authorities, the Declaration of Shelby Alvey, and the record in this matter, along with any oral argument that may be presented to the Court and evidence submitted in connection therewith.

Respectfully Submitted,

ROBERT ABEYTA, individually and on behalf of all other similarly situated,

Dated: April 15, 2025

By: */s/ Yaman Salahi*

Yaman Salahi (SBN 288752)
yaman@salahilaw.com
SALAHI PC
505 Montgomery St., 11th Floor
San Francisco, California 94111
Tel: (415) 236-2352

Rafey S. Balabanian (SBN 315962)
Natasha J. Fernández-Silber (*pro hac vice*)*
nfernandezsilber@edelson.com
EDELSON PC
150 California St., 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435
* Admitted in Michigan and New York only

*Settlement Class Counsel*

## I.    INTRODUCTION

The Court previously granted preliminary approval of the proposed Settlement, which creates a $4.5 million non-reversionary fund for the Settlement Classes, implements changes to Defendant DMCG, Inc. ("Bail Hotline")'s business practices moving forward, and relieves Settlement Class members of over $52 million in outstanding debt obligations.  The Settlement Administrator has disseminated the Court-approved notice to the Settlement Class.  The Settlement has received an overwhelmingly positive reaction: not a single class member has opted out or objected to the terms of the proposed Settlement.

That should not be surprising.  The Settlement provides class members with a strong recovery in a case that faced many risks moving forward, including, most importantly, Bail Hotline's uncertain financial condition.  As the Court is aware, this case arose out of Bail Hotline's alleged failure to provide cosigners of bail bond premium payment plans a "Notice to Cosigner" required by California Civil Code § 1799.91(a).  Plaintiff alleged that despite failing to provide the Notice, Bail Hotline continued to collect money from cosigners who had no obligation to pay, and also sent many of them a misleading and threatening "Settlement Offer." After defeating Bail Hotline's motions to transfer venue and to dismiss, obtaining extensive discovery, and briefing class certification and a motion to strike certain materials filed by Bail Hotline, Plaintiff and Class Counsel were able to secure an excellent recovery of $4.5 million, representing nearly 10% of all bail bond premiums paid by cosigners and not previously refunded as of the time of settlement.

As the Court already recognized, this is an outstanding result given the risks of further litigation as well as Bail Hotline's financial status.  It also represents a 66% higher rate of recovery than the only similar settlement involving a bail bond company, All-Pro Bail Bonds. *See Dominguez v. All-Pro Bail Bonds, Inc., et al.*, No. 21CV381890 (Cal. Super. Ct. Santa Clara October 18, 2023) (ECF No. 104-2).

Under the Settlement, Class Members' average net individual recovery is estimated to be about $101.35 and $73.46 for members of the UCL and Rosenthal Classes, respectively.  Checks will automatically be mailed to every Class Member without any requirement to submit a claim,

and approximately 574 Class Members chose to receive their payments electronically.  For the reasons that follow, the Court should grant final approval to the Settlement.

## II.    BACKGROUND

Pursuant to the Northern District of California's Procedural Guidance for Class Action Settlements, Plaintiff does not repeat the background and litigation history set forth in his pending Motion for Attorney's Fees, Costs, and Service Award.  *See* Procedural Guidelines, Final Approval ("If the plaintiffs choose to file two separate motions [for attorney's fees and final approval], they should not repeat the case history and background facts in both motions.").

## III.    SUMMARY OF SETTLEMENT TERMS

The principal terms of the Settlement before the Court are as follows:

### A.    Settlement Classes

At preliminary approval, the Court certified the following Settlement Classes for purposes of settlement.

The "**UCL Settlement Class**" means "all persons who (1) cosigned a bail bond premium financing agreement in California with DMCG, Inc.; (2) were not provided the notice described in California Civil Code Section 1799.91 prior to signing; (3) were not a spouse of the person who received release services in connection with the agreement at the time of signing; and (4) made any premium payment to DMCG, Inc. in connection with the bail bond transaction at any time on or after October 3, 2018." *See* ECF No. 117 ("Settlement") ¶ 1.26.

The "**Rosenthal Act Settlement Class**" means "all persons who (1) cosigned a bail bond premium financing agreement in California with DMCG, Inc.; (2) were not provided the notice described in California Civil Code Section 1799.91 prior to signing; (3) were not a spouse of the person who received release services in connection with the agreement at the time of signing; and (4) to whom DMCG, Inc. sent a collection letter (i.e., settlement offer letters) regarding such bail bond at any time on or after October 3, 2021." Settlement ¶ 1.21.[1]

---

[1] Excluded from both Classes are "(a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendant, Defendant's subsidiaries, patents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (c) persons who properly executed and file a
(continued...)

### B.    Settlement Fund

The Settlement requires Bail Hotline to establish a $4,500,000.00 Settlement Fund, out of which class members will be compensated, and, subject to Court approval, attorneys' fees and costs, service awards, and administrative costs will be paid.  Settlement ¶ 1.27.  If the Settlement is approved, no portion of the Settlement Fund will revert to Bail Hotline.  Given Bail Hotline's financial situation, the Settlement provides that Bail Hotline shall fund the Settlement in five installments of $900,000 each over the course of four years.  Settlement ¶ 2.1(a).  As collateral, Bail Hotline has assigned the Settlement Classes a security interest in its commercial property in Riverside, California.  *Id.* ¶ 2.1(c).  Should Bail Hotline fail to make timely payments, or cure any late payments within 30 days, the Settlement provides Class Counsel with the ability to enforce the security interest.  *Id.*

### C.    Allocation

After deduction of attorneys' fees and costs, a service award, and settlement administration expenses, the Settlement allocates $250,000 to the Rosenthal Act Settlement Class and the balance of the Fund to the UCL Settlement Class.  Settlement ¶ 2.1(b).  Members of the Rosenthal Act Settlement Class will receive an allocation proportional to the number of allegedly unlawful letters that they were sent.  *Id.*  Members of the UCL Settlement Class will receive a *pro rata* allocation proportional to the amounts they paid towards bail bond premiums during the relevant time period, less any refunds they already received from the Defendant.  *Id.*  A person who is a member of both Settlement Classes shall receive the sum of the payouts they are entitled to for each Settlement Class.  *Id.*  If the Court ultimately grants Plaintiff's requests for attorneys' fees, costs, service awards, and administrative fees in full, then each Class Member's average net recovery is expected to be approximately $101.35 for the UCL Class and $73.46 for the Rosenthal Class.  Payments will be distributed to approximately 574 Class Members who elected for electronic payments shortly after each of Defendant's installment payments; the remaining Class Members will receive one check in the mail after the third installment (in approximately two

timely request for exclusion from one or more of the Settlement Classes; and (d) the legal representatives, successors, and assigns of any such excluded persons."  ECF No. 117 at 3 n 1.

years) and a second check after the final installment (in approximately four years), to help

mitigate administrative costs.  Settlement ¶ 2.1(d).  All Class Members had an opportunity to

choose electronic payments in lieu of paper checks.

**D.      Prospective Relief**

Under the Settlement, Bail Hotline will be required to revise its bail bond forms for

transactions involving a cosigner with a payment plan to place a signature line and date is on the

Section 1799.91 Notice itself, and will be required to place the notice on a separate sheet before

the standard promissory note, as required by Cal. Civ. Code § 1799.92.  *See* Settlement ¶ 2.2(a).

Bail Hotline must also stop all attempts to collect any money owed from Settlement Class

Members in connection with an unpaid bail bond premium, including by disabling any automatic

payment plans that may be in effect.  *Id.* ¶ 2.2(b)-(c).  The Settlement does not preclude Bail

Hotline from accepting any *voluntary* payments from Settlement Class Members who may wish

to support a debtor, so long as such a payment is not made in response to any request by

Defendant or in connection with any representation by Defendant that such payment is required or

that the class member is obligated to make the payment.  *Id.* ¶ 2.2(b).  Defendant will be required

to file a sworn declaration confirming that these measures have been implemented.  *Id.*[2]

**E.      Payment of Settlement Notice and Administrative Costs**

Payment of notice and administrative costs will come from the Settlement Fund.

Settlement ¶ 1.22.  The proposed Settlement Administrator, Simpluris, Inc., estimates that notice

---

[2] While the Settlement effectively terminates and eliminates any financial obligations a
Settlement Class Member may have with respect to the payment plan for bail bond premium
governed by Section 1799.91, it does not affect any obligations that a Settlement Class Member
may have under a separately-signed indemnity agreement to pay for losses associated with issued
bail bonds.  For example, an indemnitor for a bail bond typically agrees that, if the defendant
fails to appear at trial, they will be liable for fees and costs associated with fugitive recovery or a
summary judgment imposed by a court against the bail bond surety.  *See, e.g.*, ECF No. 61-11 at
ABEYTA_000000005.  This affects a relatively small number of class members.  Bail Hotline
estimates that there are approximately 124 summary judgments associated with bond forfeitures
that may still be enforced against class members, and that it has incurred bounty hunter fees that
it may seek to recover from approximately 3,900 class members.  ECF No. 104 ¶ 13.  To
maximize protection of these Class Members, Class Counsel ensured that, as a condition of
settlement, these Class Members will not release or waive any affirmative defense to the
enforceability of any indemnification agreement based on Defendant's failure to provide a
compliant Section 1799.91 Notice.  *See* Settlement ¶ 1.18.

and administrative costs will be approximately $131,256.96. Alvey Decl. ¶ 19.[3]  Plaintiff requests

that this amount be approved by the Court, with administrative costs incurred to date to be

distributed upon final approval and the Effective Date and the balance to be distributed as the

Settlement Administrator performs its administration of the Settlement.

### F.    Payment of Attorney's Fees, Costs, and Service Award

Class Counsel moved for an award of fees equal to 25% of the Settlement Fund, to be paid

on the same schedule as payments to the Settlement Classes, and reimbursement of $29,189.43 in

litigation costs. ECF No. 118 at 7-13. Defendant retained the right to challenge that request.

Settlement ¶ 8.1. Should the Court award less than what Class Counsel requested, the balance

will remain in the Settlement Fund for distribution to Class Members. *Id.* Mr. Abeyta has also

petitioned the Court for a service award in the amount of $5,000. *Id.* ECF No. 118 at 13-14.

Should the Court approve a lower award, the balance will be distributed to Settlement Class

Members.

### G.    Release of Liability

In exchange for the relief described above, Bail Hotline will obtain a release of "any and

all past and present claims or causes of action, including but not limited to those under

California's Unfair Competition Law and Rosenthal Act, including violations, claims for

injunctions, and all claims for damages, penalties, interest, fees and costs, restitution, equitable

relief, and any other claim of relief, whether known or unknown (including 'Unknown Claims' as

defined below), arising on or before the date of the judgment from Defendant's failure to include

a compliant Section 1799.91 Notice in the underlying bail bond premium payment plan

documents. However, (1) no Settlement Class Member is releasing or waiving in any way any

affirmative defense to the enforceability of any indemnification agreement based on Defendant's

failure to provide a compliant Section 1799.91 Notice; and (2) to the extent any member of the

UCL Settlement Class or the Rosenthal Act Settlement Class timely excludes themselves from

---

[3]  Previously, Simpluris estimated administrative costs of approximately $114,420.88. *See* ECF No. 107 ¶ 3. Since then, the class size has been confirmed to be slightly higher than expected. The discrepancy in estimated administrative costs is due to the difference in class size as well as the final number of class members who selected electronic payments versus mailed checks.

one Settlement Class but not the other, the claims brought by the Settlement Class that they have excluded themselves from shall not be released."  Settlement ¶ 1.19.  The released "Unknown Claims" are defined in Paragraph 1.30.  The release is intended to operate no more broadly than the doctrine of claim preclusion would were this an individual suit related to allegedly improper cosigner debts and collection letters.

## III.   THE COURT SHOULD CONFIRM CERTIFICATION OF THE SETTLEMENT CLASSES

The Court preliminarily certified the above-defined Settlement Classes for Settlement purposes.  Plaintiff explained in his preliminary approval motion why the Classes meet Rule 23's requirements, *see* ECF No. 103, and the Court agreed, *see* ECF No. 117.  The notice process has not revealed any information that would disturb that analysis.  Class-wide resolution of class members' claims is appropriate for this case, which challenged a common course of alleged misconduct and gave rise to common questions of law and fact.  The Court should confirm its preliminary finding that the Settlement Classes should be certified for settlement purposes.

## III.   NOTICE TO THE CLASS COMPORTED WITH DUE PROCESS

The administrator, Simpluris, implemented the Court-approved notice plan with great success.  After preliminary approval, Bail Hotline provided Simpluris with data for all Class Members, which Simpluris then analyzed to remove duplicates, ensure proper formatting, and to compare the data against the United States Postal Service ("USPS") National Change of Address Database ("NCOA").  Alvey Decl. ¶¶ 6-7.  Simpluris worked with Bail Hotline to adjust its de-duplication methodology after discrepancies in the estimated class size were discovered, and ultimately concluded that there were 29,201 members of the UCL Class and 3,403 in the Rosenthal Class.  *Id.* ¶ 12.  This resulted in a total number of 32,189 class members, after accounting for overlapping membership in the classes.  On February 18, 2025, e-mail notice was sent to 21,285 class members for whom e-mail addresses were available, and only 386 bounce backs were received.  *Id.* ¶ 8.  Notice was sent via U.S. mail to the remaining 10,726 class members for whom no e-mail addresses were available, and the 386 class members whose email notices bounced back.  *Id.* ¶¶ 9-10.  Approximately 1,897 mailed notices were returned as

undeliverable.  *Id.* ¶ 11.  Of the returned notices, 1,421 were successfully redelivered after further research.  *Id.*  In total, 476 notices were undeliverable as no updated addresses were available.  *Id.* *See* Procedural Guidelines, Final Approval § 1 ("The motion for final approval briefing should include information about the number of undeliverable class notices and claim packets, the number of class members who submitted valid claims, the number of class members who opted out, and the number of class members who objected to or commented on the settlement.").

Thus, individual notice was successfully completed to 98.5% of class members, satisfying the requirements of Rule 23 and due process.  *See*, *e.g.*, *Betancourt v. Advantage Human Resourcing, Inc.*, 2016 WL 344532, at *3-4 (N.D. Cal. Jan. 28, 2016) (holding that notice program "sufficiently provided the best practicable notice to the settlement class members" where 5.9% of notices remained undeliverable); *see also Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) ("[N]either Rule 23 nor the Due Process Clause requires actual notice to each individual class member."); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Prac., & Prods. Litig.*, 736 Fed. Appx. 639, 640 (9th Cir. 2018) (holding Rule 23 and due process were satisfied notwithstanding undeliverable notices where individual notice was mailed to people at last known addresses, and settlement administrator took reasonable steps to resend notice to those whose notices were initially returned undeliverable).

In addition to the direct notice program discussed above, Simpluris established a settlement website available at www.bailhotlinesettlement.com, with copies of the long-form notice, an FAQ section, important dates (such as the deadline to opt out, object, or select a method of payment, as well as the date of the Court's final approval hearing), and copies of important documents, including the Settlement Agreement, the Addendum to the Settlement Agreement, the Court's preliminary approval order, and Plaintiff's motion for attorney's fees, costs, and service award.  Alvey Decl. ¶ 13.  Simpluris also established a toll-free hotline.  *Id.* ¶ 14.

## III.    THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL

Rule 23(e)(2) requires the Court to find that the settlement is "fair, reasonable, and adequate" after considering whether: (A) the class representative and class counsel have adequately represented the class; (B) the settlement was negotiated at arm's length; (C) the relief

provided for the class is adequate; and (D) the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). These Rule-based factors are sometimes considered through the lens of the Ninth Circuit's 8-factor approval test, which predates the current version of the Rule and overlaps with it substantially. *See Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). The eight-factors are: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Id.* These factors are discussed below within the framework established by Rule 23(e). Further, because of the pre-certification posture of this case, the factors identified by the Ninth Circuit in *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011) are also relevant. Because the *Bluetooth* factors are relevant to one of the procedural concerns highlighted by Rule 23(e), the two tests are discussed together. As Plaintiff explained in his motion for preliminary approval, and as the Court found, this Settlement clears the bar for pre-certification settlements. No objections suggesting otherwise have been filed, and no new information has come to light even hinting that the Settlement is unfair or inadequate.

### A. Mr. Abeyta and Class Counsel Adequately Represented the Classes

The first Rule 23(e) factor concerns adequate representation. The focus of this analysis is "on the actual performance of counsel acting on behalf of the class" throughout the litigation and in settlement negotiations. Fed. R. Civ. P. 23(e) Advisory Committee's Note to 2018 Amendment; *see Gumm v. Ford*, No. 5:15-CV-41-MTT, 2019 WL 479506 at *3 (M.D. Ga. Jan. 17, 2019). This factor overlaps significantly with the adequacy requirement of Rule 23(a). *See O'Connor v. Uber Techs., Inc.*, No. 13-cv-03826-EMC, 2019 WL 1437101, at *6 (N.D. Cal. Mar. 29, 2019). In considering this factor, courts examine whether plaintiff and class counsel had adequate information to negotiate a class-wide settlement. Fed. R. Civ. P. 23(e) Advisory Committee's Note to 2018 Amendment. Ultimately, this factor is generally satisfied where the named plaintiff and class counsel "have prosecuted the case with diligence and success." *In re*

*Snap Inc. Sec. Litig.*, No. 2:17-cv-0367-SVW, 2021 WL 667590, at *1 (C.D. Cal. Feb. 18, 2021).

Here, given the relatively advanced posture of this case, counsel had the information necessary to craft a fair settlement.  In discovery, Class Counsel obtained sufficient information about the total number of persons affected by the practices at issue, the total sums taken from them by Bail Hotline, and the total number of collection letters sent to them, information that allowed Class Counsel to understand the proposed classes' potential recovery, should the case proceed to trial.  *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (holding that in light of "extensive discovery," "the district court could find that counsel had a good grasp on the merits of their case before settlement talks began").  A settlement was not reached until Defendant had produced materials responsive to Plaintiffs' requests for production of documents, and four of Defendant's corporate witnesses had been deposed.  ECF No. 104 ¶ 7.  Moreover, class certification had been fully briefed by the parties, so the parties were very familiar with the strengths, weaknesses, and risks of continued litigation.  *Id.*

### B.    The Settlement Was Negotiated at Arm's Length and There Are No Indicia of Collusion

The second Rule 23(e) factor asks whether the proposed settlement was negotiated at arm's length.  "This inquiry aims to root out settlements that may benefit the plaintiffs' lawyers at the class's expense[]."  Newberg & Rubenstein on Class Actions § 13:50.  The concern, which is also embodied in this Circuit's *Bluetooth* factors, is that "the defendant will dangle such a healthy fee in front of the plaintiffs' lawyer that they will settle the class's claims at a discount."  *See id.*

Here, both sides were represented by counsel with significant class action experience.  ECF No. 104 ¶ 8.  Additionally, the parties enlisted the assistance of Judge West of JAMS, who ordered the parties to prepare mediation briefs and who supervised the parties' first attempt at mediation.  *Id.*  Although that mediation was not successful, Judge West continued to supervise negotiations for several months, and the parties ultimately settled along the same contours as those discussed with Judge West through a contentious process that lasted several months.  *Id.*

These lengthy negotiations demonstrate that the proposed Settlement is the product of arm's-length negotiations.  *See Cmty. Res. for Indep. Living v. Mobility Works of Cal., LLC*, 533

F.Supp.3d 881, 889 (N.D. Cal. 2020) ("serious, informed, non-collusive negotiations" taking place over an "extended" period weighed in favor of settlement approval); *Vianu v. AT&T Mobility LLC*, No. 19-cv-03602-LB, 2022 WL 16823044, at *7 (N.D. Cal. Nov. 8, 2022) (finding that negotiations aided by an experienced mediator weighed in favor of settlement approval).

Moreover, the Settlement bears none of the "subtle signs of implicit collusion" that the Ninth Circuit has cautioned district courts to guard against. *Roes, 1-2 v. SFBC Mgmt., LLC*, 944 F.3d 1035, 1049-50 (9th Cir. 2019). These factors, commonly called the *Bluetooth* factors, are: (1) "when counsel receive a disproportionate distribution of the settlement;" (2) "when the parties negotiate a 'clear sailing' arrangement" (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) "when the parties create a reverter that returns unclaimed [funds] to the defendant." *Bluetooth*, 654 F.3d at 947.

None of those factors appear here. First, Class Counsel asked the Court to approve a fee request that amounts to 25% of the fund. *See* ECF No. 118. This 25% figure is the "benchmark" fee award in this Circuit, and will only be awarded if the Court determines it is reasonable. *See Vizcaino v. Microsoft Corp.*, 97 F.3d 1187 (9th Cir. 1996). Similar and larger proposed awards have been found not to be indicative of collusion. *See, e.g.*, *Luz Bautista-Perez v. Juul Labs, Inc.*, No. 20-cv-01613-HSG, 2022 WL 307942, at *6 (N.D. Cal. Feb. 2, 2022) (approving 42% fee award); *Cottle*, 340 F.R.D. at 378 (proposed 25% award was "presumptively reasonable"); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) (32% fee proposal not disproportionate). Further, Class Counsel's attorney's fees will be paid out on the same installment schedule as the Class's payments, so Class Counsel will be taking on the same risk of non-payment with respect to attorneys' fees as the Class.

Second, there is no clear sailing agreement here. Although Bail Hotline ultimately did not challenge Class Counsel's fee request, it retained the right to do so under the Settlement. *See* Settlement ¶ 8.1 ("Defendant may challenge the amounts requested."). There were absolutely no discussions concerning Defendant's opposition to the fee request prior to, during, or after the mediation, and Defendant's lack of opposition to the fee request was neither an explicit nor implicit understanding of the Parties.

Third, there is no reverter or kicker clause.  All class members will be issued their payments without any need to submit a claim.  If any check goes uncashed, remaining funds will be redistributed to the class unless it is not economically feasible to do so, at which point left over funds may be given to a *cy pres* beneficiary subject to Court approval.  Settlement ¶ 2.1(h). Moreover, should the Court award less in fees, costs, or service awards than what Mr. Abeyta and proposed Settlement Class Counsel seek, the difference will remain in the Settlement Fund for distribution to Class Members.  Settlement ¶ 8.1.

Thus, the Settlement does not contain any of the subtle signs of collusion that the Ninth Circuit has cautioned against, confirming that the Settlement was negotiated at arm's length.

### C.    The Relief Obtained Is Meaningful and Significant Compared to Similar Settlements

The next Rule 23(e) factor directs the Court to consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Similarly, the *Churchill* factors include the amount offered in settlement, the strength of the plaintiff's case, and the risks and expense of further litigation, including the risk of maintaining class status through judgment.  *See Churchill*, 361 F.3d at 575.

The Court should find that the relief secured by the Settlement is more than adequate under the relevant tests.  The Settlement secures a non-reversionary $4.5 million payment for the Classes, representing nearly 10% of all bail bond premiums paid by cosigners and not previously refunded as of the time of Settlement.  This represents a 66% higher rate of recovery than the only similar settlement involving a bail bond company, All-Pro Bail Bonds, which recovered only 6% of the class's out-of-pocket payments.  *See Dominguez*, *supra*.  Including *Dominguez*, class action settlements at similar recovery percentages are often approved as fair and reasonable, particularly when, as here, there are specific reasons justifying the recovery rate.  *See*, *e.g.*, *Kissel v. Code 42 Software, Inc.*, No. SACV 15-1936-JLS (KES), 2017 WL 10560526, at *8 (C.D. Cal. Oct. 4.

2017) (granting preliminary approval of settlement reflecting 6% recovery); *Ferrell v. Buckingham Prop. Mgmt.*, 2020 WL 4364647, at *2 (E.D. Cal. July 30, 2020) (same re: 5.3% recovery); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 954, 459 (9th Cir. 2000) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair.").

Moreover, the Settlement avoids the risks associated with Defendant's inability to satisfy a judgment, as well as other risks attendant to continued litigation of the claims. For example, it became clear over the course of the litigation and the parties' settlement negotiations that Defendant lacked the ability to satisfy any significant judgment in this litigation. As a general matter, the cash bail bond industry in California has faced numerous threats to its business models in recent years, including a California Supreme Court ruling in 2021 holding that courts cannot set bail amounts higher than what a person can afford. *See In re Humphrey*, 11 Cal.5th 135 (2021). Lower bail bond rates mean lower premiums that are paid to companies like Bail Hotline. Additionally, criminal justice reform advocates have mobilized successfully to reduce reliance on cash bail in localities throughout the state. *See, e.g., Zero-bail policy takes effect in Los Angeles County, ending traditional cash system*, ABC 7 (Oct. 2, 2023), http://tinyurl.com/lazerobail. While these efforts have advanced the rights and interests of low-income people caught up in the criminal justice system, they have adversely affected the economic interests and sustainability of the cash bail bond industry, which is wholly dependent on the presence of a population that cannot afford to pay bail out of pocket.

The trend of declining business for the bail industry, including Defendant, has been compounded by other liabilities severely limiting Bail Hotline's cashflow. *See* ECF No. 104 ¶ 10. Simply put, in these circumstances, a judgment would have bankrupted Defendant, and Defendant could not afford a higher settlement amount considering its operating expenses and outstanding liabilities. *Id.* Courts recognize that such circumstances favor settlement. *See, e.g., Cavazos v. Salas Concrete, Inc.*, No. 1:19-cv-00062-DAD-EPG , 2022 WL 2918361, at *6 (E.D. Cal. July 25, 2022) (granting final approval to settlement securing 5.8% because, *inter alia*, "a larger recovery here would likely not be possible due to defendant's financial condition"); *Wright v.*

*Linkus Enters., Inc.*, 259 F.R.D. 468, 476 (E.D. Cal. 2009) (granting preliminary approval to settlement where "the financial condition of Defendants creates the possibility that Defendants could not withstand greater liability than the proposed settlement amount"); *Vu v. I Care Credit, LLC*, No. CV 17-04609 RAO, 2022 WL 22871480, at *9 (C.D. Cal. Nov. 4, 2022) (noting that "Defendant's financial condition is again an important consideration" because "Plaintiff's counsel had to negotiate a settlement amount that Defendant could pay so that class members could receive any monetary relief at all").

Defendant's financial difficulties are also the reason why the Settlement Fund must be funded in installments, a practice that is regularly accepted by courts. *See*, *e.g.*, *Rodriguez v. M.J. Bros, Inc.*, No. 1:18-cv-00252-LJO-SAB, 2019 WL 3943856, at *5 (E.D. Cal. Aug. 21, 2019) (granting final approval of class action settlement to be funded in 6 installments); *North v. Superior Hauling & Fast Transit, Inc.*, No. EDCV 18-2564 JGB (KKx), 2020 WL 12967999, at *3 (C.D. Cal. Dec. 7, 2020) (granting final approval of class action settlement to be funded in installments over 4 years); *Etter v. Thetford Corp.*, No. SACV 13-00081-JLS (RNB), 2016 WL 11745096, at *3 (C.D. Cal. Oct. 24, 2016) (granting final approval with four annual installments). To safeguard against the risk that Defendant may nevertheless become insolvent, the Settlement also requires Defendant to put up its commercial property in Riverside, California as collateral. Settlement ¶ 2.1(c). Under this provision, if Defendant fails to make a timely payment within 30 days of being notified of a breach, the full amount of the Settlement becomes immediately payable and due, and Class Counsel may, to the benefit of the Settlement Classes, take steps to enforce the security interest in Defendants' property.

In addition, traditional criteria regarding the risks and uncertainty associated with ongoing litigation also factored into Class Counsel's judgment. Although Plaintiff successfully defeated Defendant's motion to dismiss and was confident he could defeat any motion for summary judgment and prevail at trial, significant risks still remained on the merits.

*First*, a critical premise of Plaintiff's claims is that Defendant's failure to provide cosigners with the Section 1799.91 Notice not only rendered the debt obligations unenforceable, but also prevented a debt obligation from being formed in the first place. While this Court

1    appeared to agree with that interpretation at the motion to dismiss stage, and Judge Thompson

2    initially reached a similar conclusion in the *Medina v. Two Jinn, Inc.* matter, *Medina* was recently

3    re-assigned to the Honorable Rita F. Lin, who reversed the earlier holdings and concluded that

4    Section 1799.91 does not render the debts "invalid," but rather simply unenforceable through

5    operation of Section 1799.95. *See Medina v. Two Jinn, Inc.*, No. 22-cv-02540-RFL, 2024 WL

6    4485592, at *2 (N.D. Cal. Mar. 28, 2024). If this Court were to change its view, too, Plaintiff and

7    the Settlement Classes' claims could have been substantially weakened if not eliminated.

8         *Second*, unlike this Court, both Judge Thompson and Judge Lin refused to allow the

9    plaintiffs in their cases to seek restitution of amounts paid under the UCL, reasoning that the

10    plaintiffs had received a benefit whose value exceeded what they paid—the release of their loved

11    ones. *Medina*, 2024 WL 4485592, at *3. Although this Court refused to dismiss Plaintiff's UCL

12    claim on that basis, it left open the question what amount of restitution, if any, could be obtained

13    for a later stage. *See Abeyta v. DMCG, Inc.*, No. 22-cv-07089-SI, 2023 WL 3047054, at *2 (N.D.

14    Cal. Apr. 20, 2023) ("DMCG's arguments about restitution raise factual questions that cannot be

15    resolved at this stage of the litigation[.]").

16         Further, the Court might have required Plaintiff and proposed UCL Class Members to

17    adduce evidence that they would not have helped their friends or loved ones out of jail if they had

18    received the Section 1799.91 Notice, and may not have given weight to their testimony to that

19    effect. Indeed, in opposition to class certification, Defendant introduced testimony from certain

20    individuals who claimed the notice would have made no difference to their decision to cosign.

21    While Plaintiff disputed the credibility of the declarations and moved to strike them given the

22    questionable and misleading circumstances under which they were obtained, there was still risk at

23    the merits stage that Plaintiff and the proposed UCL Class Members would be unable to obtain

24    any amount of restitution. This factor strongly supports the proposed Settlement.

25         *Third*, even assuming there was *no* risk to the proposed Rosenthal Act Settlement Class's

26    claims (and, as will be explained, there was), this claim was capped at a maximum recovery of

27    $500,000 or 1% of Defendant's net worth (likely pushing it much lower given its financial

28    condition). *See* 15 U.S.C. § 1692k(a)(2)(B). Under the proposed Settlement, the Rosenthal Act

Settlement Class (which largely overlaps with the UCL Restitution Class) will secure $250,000, representing a strong recovery.  Settlement ¶ 2.1(b).  In any case, there was still some risk associated with this claim.  Plaintiff premised this claim *both* on the letters' misleading assertion that he and other class members owed a debt, *and* on their implicit threat to engage in unlawful activity, like suing him or other class members.  However, if the Court were to follow Judge Lin's analysis, then the theory based on misleading statements may have been lost.  *See Medina*, 2024 WL 4485592, at *2 ("Because the bail bonds agreements remain valid though unenforceable, statements that Plaintiffs owed money under those agreements were not deceptive or misleading as a matter of law.").  Further, the trier of fact may have disagreed that statements in the letters contained an implicit threat of litigation, potentially eliminating the second theory of liability under the Rosenthal Act.

In short, while Mr. Abeyta was confident in his ability to prevail on the merits, there are ample reasons justifying the settlement recovered here—Defendant's financial condition, risk that the Court might follow the legal analysis adopted by Judge Lin, and risk that the relevant trier of fact either may disbelieve Plaintiff and class members' assertions about whether they would have cosigned the bail bonds or made payments had they received the disclosure, or disagree that the various Settlement Offer Letters implicitly threatened enforcement of unenforceable debts.

Balanced against these significant risks, the proposed Settlement is more than fair, reasonable, and adequate, especially given that payments will be sent automatically to each class member's last known address without any requirement to submit a claim form.  *See Taafua v. Quantum Glob. Techs., LLC*, No. 18-cv-06602-VKD, 2020 WL 4732342, at *7 (N.D. Cal. Aug. 14, 2020) ("Considering the potential risks and costs of proceeding to trial, as well as the relative ease with which class members may receive their funds, at this stage the Court is satisfied that the settlement consideration is adequate.").

Finally, as discussed in the pending fee petition, *see* ECF No. 118, the attorney's fees requested here are reasonable and payable on the same schedule as the class members' payments. Thus, the relief secured by the Settlement demonstrates that the Settlement is fair and reasonable.

### D. The Settlement Treats Class Members Equitably

The final Rule 23(e) factor concerns whether the proposed settlement treats class members equitably relative to each other. The Settlement easily passes this test, as Settlement Class Members' recovery is calibrated to how much they were charged for bail bond premiums (for the UCL Settlement Class) and how many misleading and threatening letters they were sent (for the Rosenthal Act Settlement Class). *See*, *e.g.*, *In re Omnivision Techs., Inc.*, 559 F.Supp.2d at 1045 ("It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits."). This type of pro rata allocation is fair and reasonable.

Finally, Mr. Abeyta has requested a service award, that does not automatically indicate inequitable treatment. Such awards are commonplace, and serve to recognize the valuable efforts of a class representative, without which this type of representative litigation and class settlement could not even exist. As noted above, Mr. Abeyta expended substantial efforts in support of the Classes. *See* ECF No. 119 ¶¶ 9-10; ECF No. 120 ¶¶ 2-7. Mr. Abeyta petitioned the Court for an award of up to $5,000, which represents about 0.11% of the proposed Settlement Fund and is presumptively reasonable. *See*, *e.g.*, *In re Facebook Biometric Info. Privacy Litig.*, No. 21-15553, 2022 WL 822923, at *2 (9th Cir. Mar. 17, 2022) (noting that the Ninth Circuit "regularly uphold[s] incentive awards" of $5,000). Thus, this additional allocation of funds is equitable. *See Evans v. Zions Bancorp., N.A.*, No. 2:17-CV-01123 WBS DB, 2022 WL 16815301, at *5 (E.D. Cal. Nov. 8, 2022) (finding that $5,000 service awards comported with equitable treatment of class members); *see also Juarez*, 2022 WL 17722382, at *6 (noting that settlement's provision for an incentive award did not indicate preferential treatment because any such award would need to be supported with evidence).

### E. There Are No Objections or Opt Outs

No Class Member objected to the terms of the Settlement, the request for attorney's fees, or Mr. Abeyta's request for a service award. Additionally, no Class Members have opted out of either Settlement Class.

## IV.    CONCLUSION

Plaintiff respectfully requests that the Court enter an order confirming certification of the Settlement Classes for settlement purposes, confirming the appointment of Robert Abeyta to represent the Settlement Classes, and of Yaman Salahi of Salahi PC and Rafey S. Balabanian and Natasha Fernández-Silber of Edelson PC as Co-Lead Class Counsel, finding the notice to the Settlement Classes satisfied Due Process, finally approving the Settlement, ordering that the Settlement Fund be distributed in accordance with the Settlement, and entering a final judgment in this matter.  The proposed final approval order submitted with this brief sets the schedule for the submission of the mandated post-distribution accounting.

Date: April 15, 2025

By: /s/ Yaman Salahi

Yaman Salahi (SBN 288752)
yaman@salahilaw.com
SALAHI PC
505 Montgomery St., 11th Floor
San Francisco, California 94111
Tel: (415) 236-2352

Rafey S. Balabanian (SBN 315962)
Natasha J. Fernández-Silber (*pro hac vice*)*
nfernandezsilber@edelson.com
EDELSON PC
150 California St., 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435
* Admitted in Michigan and New York only

*Settlement Class Counsel*