Yaman Salahi (SBN 288752)
yaman@salahilaw.com
SALAHI PC
505 Montgomery St., 11th Floor
San Francisco, California 94111
Tel: (415) 236-2352

Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Natasha J. Fernández-Silber (*pro hac vice*)*
nfernandezsilber@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435
* Admitted in Michigan and New York only

*Co-Lead Class Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBERT ABEYTA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DMCG, INC., a California corporation,<br><br>Defendant. | CASE NO.: 3:22-cv-07089-SI<br><br>[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF A CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEY'S FEES AND SERVICE AWARD<br><br>Hon. Susan Illston |

The above-captioned matter came before this Court upon Plaintiff's Motion for Final Approval of Class Action Settlement (ECF No. 121) and Motion for Attorney's Fees and a Service Award (ECF No. 118). Based upon the memoranda, declarations, exhibits submitted, as well as the files and proceedings in this case, the Court finds as follows:

1. The terms and phrases in this order shall have the same meaning as ascribed to them in the Settlement Agreement, as modified by the Parties' Addendum to the Settlement Agreement (*see* ECF Nos. 104-1 & 116-1).

2. Plaintiff has moved the Court for an order granting final approval of the Settlement of the Action in accordance with the Settlement Agreement, which, together with its incorporated documents, sets forth the terms and conditions for a proposed settlement and dismissal of this case with prejudice. The Court, having read and considered the Settlement Agreement and having heard the parties, finds that it is fair, adequate, and reasonable to the Settlement Classes. Accordingly, the Court grants final approval of the terms of the Settlement Agreement and confirms its certification of the Settlement Classes defined below for settlement purposes, as well as its appointment of Co-Lead Class Counsel and the Class Representative.

3. The Court has subject-matter jurisdiction over the Action to approve the Settlement Agreement, including all attached exhibits, and personal jurisdiction over all Parties to the Action, including all Settlement Class Members.

**Certification of the Settlement Classes**

4. On January 21, 2025, the Court preliminarily approved the Settlement Agreement, and certified, for settlement purposes, the Settlement Classes defined as follows:

> The "**UCL Settlement Class**" means all persons who (1) cosigned a bail bond premium financing agreement in California with DMCG, Inc.; (2) were not provided the notice described in California Civil Code Section 1799.91 prior to signing; (3) were not a spouse of the person who received release services in connection with the agreement at the time of signing; and (4) made any premium payment to DMCG, Inc. in connection with the bail bond transaction at any time on or after October 3, 2018.

> The "**Rosenthal Act Settlement Class**" means all persons who (1) cosigned a bail bond premium financing agreement in California with DMCG, Inc; (2) were not provided the notice described in California Civil Code Section 1799.91 prior to

signing; (3) were not a spouse of the person who received release services in connection with the agreement at the time of signing; and (4) to whom DMCG, Inc. sent a collection letter (i.e., settlement offer letters) regarding such bail bond at any time on or after October 3, 2021.[1]

(*See* ECF No. 117.)

5. The Class Representative and Co-Lead Class Counsel adequately represented the Settlement Classes for purposes of entering into and implementing the Settlement Agreement. The Court now confirms certification of the Settlement Classes for purposes of entering final judgment.

6. The Court further holds that this Settlement is a fair, just, and adequate settlement in view of the risk involved, the recovery amount, and the amount of preparation that has gone into it; that the Settlement has all the indicia of a fair settlement; that there are no indicia of manipulation; that the Settlement contains no obvious deficiencies; that there are no obvious conflicts of interest; that the Settlement contains no preferential treatment; and that Co-Lead Class Counsel demonstrated their competence, ability and qualifications to handle the Action.

7. Having convened the Final Approval Hearing, provided Class Members with an opportunity to object, and no objections having been received, the Court finds that the Settlement Agreement is fair, reasonable, and adequate, and is in the best interests of the Settlement Classes set forth above. The Court further finds that the Settlement Agreement substantially fulfills the purposes and objectives of the class action and provides substantial relief to the Settlement Classes without the risks, burdens, costs, or delay associated with continued litigation, trial, and/or appeal (*e.g.*, the potential inability to collect a judgment from Defendant, and several litigation risks described at length in Plaintiff's motion for final approval).

8. In particular, the proposed $4.5 million Settlement Fund, which is to be distributed to Settlement Class Members by check or electronically without requiring Class Members to file a

---

[1] Excluded from each of the Settlement Classes are (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (c) persons who properly execute and file a timely request for exclusion from one or more of the Settlement Classes; and (d) the legal representatives, successors, and assigns of any such excluded persons.

claim and without the possibility of reverting to Defendant, is fair, reasonable, and adequate. The proposed Settlement reflects a recovery of approximately 10% of the maximum verdict value, a result not inconsistent with the litigation risks, such as the expense of prolonged litigation and Defendant's potential inability to satisfy a judgment. Counsel had engaged in substantial discovery and motion practice in this matter, and the Court finds that the Settlement Agreement is the result of arm's length negotiations between experienced class action attorneys familiar with the legal and factual issues of this case. The Court additionally finds that adequate notice of the Settlement and Final Approval Hearing was provided to the Settlement Classes; there are no obvious deficiencies; the Settlement meets all applicable requirements of law, including Federal Rule of Civil Procedure 23 and the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, gives no party preferential treatment (even with the proposed service award to Mr. Abeyta); and is not a finding or admission of liability by Defendant or other parties. Moreover, as discussed below, Co-Lead Class Counsel have requested only 25% of the Settlement Fund in attorney's fees, which is equivalent to a lodestar multiplier of 2.13 and which will be paid out in installments similar to Class Members.

**Notice to the Class Satisfied Rule 23 and Due Process**

9. The parties and the Settlement Administrator have apprised the Court about the outcome of the Court-ordered notice plan.

10. After preliminary approval, Bail Hotline provided Simpluris with data for all Class Members, which Simpluris then analyzed to remove duplicates, ensure proper formatting, and to compare the data against the United States Postal Service ("USPS") National Change of Address Database ("NCOA"). Alvey Decl. ¶¶ 6-7. Simpluris worked with Bail Hotline to adjust its de-duplication methodology after discrepancies in the estimated class size were discovered, and ultimately concluded that there were 29,201 members of the UCL Class and 3,403 in the Rosenthal Class. Id. ¶ 12. This resulted in a total number of 32,189 class members, after accounting for overlapping membership in the classes. On February 18, 2025, e-mail notice was sent to 21,285 class members for whom e-mail addresses were available, and only 386 bounce backs were received. Id. ¶ 8. Notice was sent via U.S. mail to the remaining 10,726 class

members for whom no e-mail addresses were available, and the 386 class members whose email notices bounced back. *Id.* ¶¶ 9-10. Approximately 1,897 mailed notices were returned as undeliverable. *Id.* ¶ 11. Of the returned notices 1,421 were successfully redelivered after further research. *Id.* In total, 476 were returned as undeliverable because no updated address was available. *Id*.

11. Accordingly, direct notice was provided to 98.5% of Settlement Class Members, which is adequate for purposes of Rule 23 and due process. *See*, *e.g.*, *Betancourt v. Advantage Human Resourcing, Inc.*, 2016 WL 344532, at *3-4 (holding that notice program "sufficiently provided the best practicable notice to the settlement class members" where 5.9% of notices remained undeliverable); *see also Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) ("[N]either Rule 23 nor the Due Process Clause requires actual notice to each individual class member."); *Edwards v. Andrews*, 846 Fed. App'x. 538, 539 (9th Cir. 2021) (holding that direct notice to "at least 75 percent of the class" satisfied due process); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Prac., & Prods. Litig.*, 736 Fed. Appx. 639, 640 (9th Cir. 2018) (holding Rule 23 and due process were satisfied notwithstanding undeliverable notices where individual notice was mailed to people at last known addresses, and settlement administrator took reasonable steps to resend notice to those whose notices were initially returned undeliverable).

12. In addition to the direct notice program discussed above, Simpluris established a settlement website available at www.bailhotlinesettlement.com, with copies of the long-form notice, an FAQ section, important dates (such as the deadline to opt out, object, or select a method of payment, as well as the date of the Court's final approval hearing), and copies of important documents, including the Settlement Agreement, the Addendum to the Settlement Agreement, the Court's preliminary approval order, and Plaintiff's motion for attorney's fees, costs, and service award. Alvey Decl. ¶ 13. Simpluris also established a toll-free hotline for Class Members to utilize to obtain more information about the Settlement. *Id.* ¶ 14.

13. Based on the record before the Court, the Court finds that the Notice program, as implemented, was the best practicable notice under the circumstances. The Notice reached 98.5%

of the Settlement Classes and was reasonably calculated to apprise the Settlement Classes of the pendency of the Action and their rights to object to or exclude themselves from the Settlement Agreement and to appear at the Final Approval Hearing. Therefore, the Notice was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice including all necessary information to protect the interests of the Settlement Classes and fulfilled the requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of this Court.

14. The Court further finds that the appropriate government officials were properly and timely notified of the Settlement Agreement, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715. As required by CAFA, more than ninety (90) days have elapsed between the date since notice was provided pursuant to CAFA and the Final Approval Hearing. *See* ECF No. 108 (affidavit confirming CAFA notice was provided on December 16, 2024).

**Final Approval of the Settlement**

15. Rule 23(e)(2) requires the Court to find that the settlement is "fair, reasonable, and adequate" after considering whether: (A) the class representative and class counsel have adequately represented the class; (B) the settlement was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). These factors are consistent with the eight *Churchill* factors customarily applied in the Ninth Circuit before the current version of Rule 23 was adopted. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). The eight *Churchill* factors are: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Id*. Further, because of the pre-certification posture of this Settlement, the Court must consider the factors identified by the Ninth Circuit *in In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011). The Court applies these factors below.

16. <u>Adequacy</u>: The Court finds that Co-Lead Class Counsel and Plaintiff have adequately represented the Settlement Classes. The Court is satisfied that Co-Lead Class Counsel obtained adequate information about the scope of Defendant's conduct, including how many people were affected as well as the total amount in controversy. That was a sufficient basis to be able to undertake settlement discussions in an informed manner in light of Co-Lead Counsel's experience in this area of law.

17. <u>Arm's Length Negotiations</u>: The Settlement was negotiated at arm's length, with both parties represented by experienced counsel, and with the assistance of a neutral third-party mediator, JAMS mediator retired Judge West. Although the mediation was unsuccessful, the parties thereafter resumed direct negotiations over the course of several months to reach an agreement. The Court is satisfied that the negotiations were conducted at arm's length.

18. <u>No Indicia of Collusion</u>: The Court is also satisfied that none of the subtle signs of implicit collusion that the *Bluetooth* factors are designed to detect are present here. Co-Lead Class Counsel did not negotiate to receive a disproportionate share of the Settlement. The Settlement states Co-Lead Class Counsel can request up to 25% of the fund, which is the benchmark in the Ninth Circuit. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002). There was no clear-sailing arrangement, as Defendant retained the right to oppose Co-Lead Class Counsel's fee request. And there is no reverter or kicker clause in the Settlement, as Class Members can receive relief under the Settlement automatically without the need to submit a claim form, and any funds that cannot be distributed will not be returned to Defendant.

19. <u>Relief for the Class</u>: The Settlement obtains meaningful relief for the Class, recovering nearly 10% of the amounts that Class Members were charged in bail bond premium fees. Further, Defendant has agreed to revise its forms to comply with the California law under which this action was brought, and to stop attempting to collect on Settlement Class Members in over $52 million in outstanding debts. In light of the posture of the case, and the costs, risks, and benefits of proceeding through trial, the Court agrees that the relief secured is fair, reasonable, and adequate. Moreover, there were no negative reactions from State Attorneys General to the

proposed Settlement or from Class Members. There were no objections or exclusion requests from any of over 32,000 Class Members, suggesting the Classes are satisfied with the result.

20. <u>Equitable Treatment</u>: The Court also finds that the proposed Settlement treats Class Members equitably. Each Class Member's recovery is determined *pro rata* in proportion to their individual losses at issue (for the UCL Settlement Class) and the number of allegedly unlawful "settlement offer" letters they received (for the Rosenthal Act Settlement Class). And although Plaintiff seeks a service award, it does not indicate inequitable treatment because it constitutes just 0.11% of the Settlement Fund, is in line with comparable service awards in this District, and, as explained below, reasonably compensates Plaintiff for the responsibilities he undertook to bring this case to benefit the Settlement Classes.

21. In sum, the Court finds that the Settlement Agreement is fair, reasonable, and adequate, may be approved pursuant to Federal Rule of Civil Procedure 23(e)(2), and is in the best interests of the Settlement Classes set forth above. The Court further finds that the Settlement Agreement substantially fulfills the purposes and objectives of the class action, and provides substantial relief to the Settlement Classes without the risks, burdens, costs, or delay associated with continued litigation, trial, and/or appeal. The Court also finds that the Settlement Agreement is the result of arm's-length negotiations between experienced class action attorneys familiar with the legal and factual issues of this case.

22. The Settlement Agreement is hereby finally approved in all respects. The Parties and their counsel are directed to implement and consummate the Settlement Agreement according to its terms and conditions. The Parties and Settlement Class Members are bound by the terms and conditions of the Settlement Agreement.

23. Other than as provided in the Settlement Agreement and this Order, the Parties shall bear their own costs and attorney's fees.

24. Subject to the terms and conditions of the Settlement Agreement, this Court hereby enters this Final Approval Order and dismisses the Action on the merits and with prejudice. However, the Court retains jurisdiction over the supervision and enforcement of the Settlement Agreement.

25. Upon the Effective Date of the Settlement Agreement, and as provided therein, Plaintiff and the Settlement Class Members shall have fully, finally, and forever released, acquitted, relinquished and completely discharged Defendant of "any and all past and present claims or causes of action, including but not limited to those under California's Unfair Competition Law and Rosenthal Act, including violations, claims for injunctions, and all claims for damages, penalties, interest, fees and costs, restitution, equitable relief, and any other claim of relief, whether known or unknown (including 'Unknown Claims' as defined below), arising on or before the date of the judgment from Defendant's failure to include a compliant Section 1799.91 Notice in the underlying bail bond premium payment plan documents. However, (1) no Settlement Class Member is releasing or waiving in any way any affirmative defense to the enforceability of any indemnification agreement based on Defendant's failure to provide a compliant Section 1799.91 Notice; and (2) to the extent any member of the UCL Settlement Class or the Rosenthal Act Settlement Class timely excludes themselves from one Settlement Class but not the other, the claims brought by the Settlement Class that they have excluded themselves from shall not be released." Settlement Agreement ¶ 1.19. The released "Unknown Claims" are defined in Paragraph 1.30 of the Settlement. The release is intended to operate no more broadly than the doctrine of claim preclusion would were this an individual suit related to allegedly improper cosigner debts and collection letters.

**Motion for Attorney's Fees and Service Award**

26. Plaintiff has also petitioned the Court for an award of attorney's fees equivalent to 25% of the Settlement Fund, or $1,125,000.00.

27. The Court must decide whether Co-Lead Class Counsel's request is reasonable. *See* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."); *Lowery v. Rhapsody Int'l, Inc.*, 69 F.4th 994, 1002-03 (9th Cir. 2023) ("The key factor in assessing the reasonableness of attorneys' fees is the benefit to the class members."). The Court concludes that it is.

28. As a preliminary matter, the Court exercises its discretion to apply the common fund method to the fee request rather than the lodestar method. *See In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2018 WL 4620695, at *1 (N.D. Cal. Sept. 20, 2018). The percentage-of-the-fund method is the prevailing practice in the Ninth Circuit. *See In re Korean Air Lines Co., Ltd. Antitrust Litig.*, No. CV 07-05107 SJO AGRx, 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013). The Ninth Circuit has established a benchmark award of 25%. *See Vizcaino*, 290 F.3d at 1047-48.

29. Considering the relevant factors, the Court concludes that an award of 25% of the Settlement Fund, or $1,125,000.00, is reasonable. As discussed above, the Settlement secures excellent relief for the Class, including returning nearly 10% of the Settlement Classes' losses. This is a commendable result given the litigation risks faced by Co-Lead Class Counsel and the Settlement Classes, as explained above. Co-Lead Class Counsel also took this case on contingency. The Court concludes that a 25% award is reasonable in light of these considerations.

30. Finally, although a lodestar cross-check is discretionary, the Court applies one to confirm the reasonableness of the 25% award. Co-Lead Class Counsel estimate their lodestar to be approximately $528,099.00, reflecting over 981.5 hours of work. The Court finds that the hours reported and rates are reasonable, and that the resulting multiplier of 2.13 is also reasonable.

31. The Court approves Co-Lead Class Counsel's request for attorney's fees. Fees are to be paid in installments, in accordance with the schedule set forth in the Settlement Agreement.

Reasonableness of Reimbursement of Costs

32. Co-Lead Class Counsel also request reimbursement of $29,189.43 in costs related to the prosecution of this litigation. The lion's share—$27,416.00—were videographer and court reporting fees for five depositions and a mediation fee. The remaining costs are standard litigation costs such as printing, copying, postage costs, filing fees, and research fees, which are routinely approved. *See, e.g.*, *Sullivan v. Dolgen California, LLC*, No. 3:15-CV-01617-JD, 2017 WL 3232540, at *2 (N.D. Cal. July 31, 2017); *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *16 (N.D. Cal. Sept. 2, 2015). The Court finds that the request for reimbursement is reasonable and grants it.

Reasonableness of Service Award

33. Plaintiff also petitions the Court for a $5,000 service award. "Service awards as high as $5,000 are presumptively reasonable in this judicial district." *Juarez v. Social Fin., Inc.*, No. 20-CV-03386-HSG, 2023 WL 3898988, at *8 (N.D. Cal. June 8, 2023). They are designed to compensate plaintiffs for taking on the duties, responsibilities, risks, and burdens of being a class representative.

34. Here, Plaintiff was actively involved in the litigation, helped counsel investigate the case, prepared for and sat at a deposition, and was prepared to testify at trial if needed, notwithstanding very challenging life circumstances. *See generally* Abeyta Decl. Ultimately, the Court finds that the $5,000 award is fair and reasonable, as it adequately compensates Plaintiff for securing these benefits for the Classes and represents only 0.11% of the Settlement Fund.

**Conclusion**

35. For the reasons stated herein, the Court hereby **GRANTS** Plaintiff's motion for final approval and motion for attorney's fees, costs, and service award.

36. Counsel for the Parties and the Settlement Administrator are hereby authorized to utilize all reasonable procedures in connection with the implementation of the Settlement which are not materially inconsistent with either this Order or the terms of the Settlement Agreement, including disbursement of relief to the Classes, the Settlement Administrator's fees, the Plaintiff's service award, and Co-Lead Class Counsel's attorney's fees and costs.

37. Without affecting the finality of this Final Approval Order for purposes of appeal, the Court retains jurisdiction as to all matters related to the administration, consummation, enforcement, and interpretation of the Settlement Agreement and this Final Approval Order, and for any other necessary purpose.

38. Per the District's Procedural Guidance for Class Action Settlements, the parties shall file a Post-Distribution Accounting, and post it on the settlement website, after each distribution, within 21 days after uncashed checks or unsuccessful electronic payments expire. The Accounting shall include the details required under the Procedural Guidance.

**IT IS SO ORDERED.**

Dated this  2  day of   May      , 2025.

_____
Hon. Susan Illston
United States District Judge

Presented by:

By: */s/ Yaman Salahi*

Yaman Salahi (SBN 288752)
yaman@salahilaw.com
SALAHI PC
505 Montgomery St., 11th Floor
San Francisco, California 94111
Tel: (415) 236-2352

Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Natasha J. Fernández-Silber (*pro hac vice*)*
nfernandezsilber@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435
* Admitted in Michigan and New York only

*Co-Lead Class Counsel*